THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEFFREY MOLETERNO, Defendant-Appellant.

First District (3rd Division)   No. 1—88—0546

Opinion filed May 16, 1990.—Rehearing denied June 28, 1990.

Edward M. Genson and Geena Diane Cohen, both of Genson, Steinback & Gillespie, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Jeffrey Moleterno, was convicted of the murder of Timothy Bolger by a jury in the circuit court of Cook County. Defendant was sentenced to 20 years' imprisonment. He appeals.

The State's chief witness, Russell Marquardt, testified as follows. On February 3, 1987, Marquardt left his home at 8 p.m. and drove north on Central Avenue, which has one traffic lane and one curb or parking lane in each direction. Upon reaching the intersection of Central Avenue and Eastwood, Marquardt observed two autos stopped in the traffic lane facing north. Bolger's auto, a Cadillac, was in front of defendant's auto, a Buick. The lighting conditions at the scene were good. Marquardt saw defendant standing next to his car with the driver's door open and arguing with Bolger, who was standing on the other side of the open car door. Bolger had one hand on the top of the car door and was pointing a finger at defendant with the other hand.

Marquardt did not see any kind of weapon in Bolger's hands at this time.

Marquardt then continued northbound on Central. As Marquardt reached the intersection of Central and Lawrence Avenues, about two blocks north of Eastwood, Bolger's auto passed him on the right. Bolger was not swerving in and out of traffic or speeding at this time. Bolger proceeded to the intersection of Central and Higgins, a little over two blocks from Central and Lawrence. Bolger, who had his left turn signal on, moved into the left turn lane. Marquardt, who also intended to turn left, pulled into the left turn lane. One car separated Marquardt's and Bolger's autos. After the light turned green for Central Avenue, Bolger turned left or westbound onto Higgins. After the auto behind Bolger's proceeded past the intersection, Marquardt proceeded to turn left onto Higgins. As he was doing so, defendant sped around him on the right and went westbound on Higgins. Marquardt had to slow down to avoid hitting defendant's auto, which came within two feet of Marquardt's auto. Defendant, whose tires were screeching when he went around Marquardt, accelerated his vehicle once on Higgins.

As defendant drove west on Higgins, he was flashing his high beam headlights on and off. About two hundred feet west of Central, Bolger's auto stopped in the traffic lane. Defendant drove to within five or six feet behind and slightly to the right of Bolger's auto. Marquardt stopped his car directly behind defendant's car due to the presence of oncoming traffic. The lighting conditions at the scene were good. After stopping, Marquardt remained in his car. At that time, defendant got out of his car and began pointing at Bolger with his left hand while holding a chrome-plated gun behind his back with his right hand. Defendant then sidled toward Bolger while hollering at him. At this time, Bolger exited his auto while holding a drinking glass, drank from the glass and took about two steps toward defendant's car. When Bolger reached the rear of his auto, defendant was within five or six feet of him. Defendant, who was still sidling toward Bolger and had not exposed the gun to him, pivoted, pointed the gun at Bolger's chest and fired. Thereafter, defendant ran back to his auto, turned his headlights off and sped away. Marquardt did not see Bolger holding a knife at any time that night. Marquardt identified defendant in a police lineup later in the evening.

On cross-examination, Marquardt agreed that he had assumed that defendant and Bolger were arguing when he first saw them. He further admitted that he did not know how long the first altercation had lasted, nor did he know everything that had occurred during the

altercation or what had caused it. Marquardt also admitted that he did not hear specifically what was said during the second altercation and did not know whether defendant was telling Bolger to leave him alone.

Chicago police officer Edmond Harder testified for the State that, upon arriving at the scene of the shooting, he observed a plastic drinking cup and straw about three feet away from Bolger's body. Bolger's body was lying by the rear bumper of the Cadillac.

Chicago police officer Robert Smitka testified for the State that he recovered a NATO military knife from the left sleeve pocket of the jacket Bolger was wearing. Smitka testified that the knife "wasn't really operational" when he pulled it from the pocket.

Defendant testified in his own behalf to the following. On February 3, 1987, defendant was driving north on Central Avenue when he observed the auto driven by Bolger swerving in and out of traffic. As defendant and Bolger were driving north on Central, Bolger's auto came to a stop in between the two northbound lanes. At that time, defendant flashed his headlights at Bolger to indicate that Bolger could get in front of him in defendant's lane. Defendant, a truck driver, stated that truck drivers used that procedure to signal other drivers that it is all right to enter the lane that they are in. Thereafter, Bolger pulled into defendant's lane in front of him, exited his auto and walked back toward defendant's auto. Defendant also exited his auto and Bolger asked, "What the f--- are you flashing your lights at me for you j--- o--." Defendant responded that he just wanted to let Bolger into his lane. Bolger then slapped defendant in the face and defendant said, "What's wrong with you? I just tried to signal." Bolger slapped defendant in the face again, knocking defendant's eyeglasses off. Defendant picked his eyeglasses up, put them on and turned to face Bolger. As he did so, Bolger pulled a knife and said, "If you ever flash your lights at me again, I'll kill you." Thereafter, defendant entered his car and locked the door. Defendant had noticed that Bolger smelled of alcohol. After other drivers began blowing their car horns, Bolger entered his auto and proceeded north on Central. Defendant stopped his auto directly behind Bolger's at the stop light at Central and Lawrence Avenues. Upon proceeding after the light changed, Bolger swerved his auto from the right lane into the left lane. As a result, Bolger and defendant were next to each other at the intersection of Central and Higgins. At that time, defendant realized that beyond the next intersection, which was controlled by a stop sign, Central's two lanes merged into one. As such, defendant, who did not want any more trouble, was afraid to proceed north on

Central because he knew that he or Bolger would have to yield. As a result, defendant ran the red light at Higgins and turned left from the right lane and in front of Bolger's auto. Bolger also turned left almost simultaneously with defendant. Although defendant tried to outrace Bolger, Bolger passed him and cut defendant off. The area where the vehicles stopped was well lit. Bolger exited his car, and defendant observed something in Bolger's hand. The thing in Bolger's hand "glinted," but defendant did not know what it was. Defendant also exited his car, the lights of which were on, and said, "I don't want anymore trouble." Bolger responded, "Now I'm going to kill you you little j--- o--." Defendant then took a step back and shot Bolger once with a gun he had in his back pocket. Bolger turned and stepped toward his car. Defendant was scared because he thought Bolger was going for something in his trunk. Defendant ran to his auto, turned the lights off and drove home.

On cross-examination, defendant denied the version of events after the first altercation to which Marquardt testified. In addition, defendant stated that he came to within six to eight feet of Bolger during the second altercation and that Bolger was six feet away when defendant shot him. Defendant stated that he gave the gun to his wife and did not know where it was.

Opinion

On appeal, defendant first contends the trial court erred in denying a directed verdict in his favor at the close of all the evidence. Defendant asserts that the State's evidence, specifically Marquardt's testimony, was insufficient as a matter of law to establish his guilt beyond a reasonable doubt.

Defendant first specifically notes that Marquardt did not see his first altercation with Bolger in its entirety. What we cannot fathom from this assertion, even if it and defendant's testimony regarding that altercation are true, is why it necessarily makes Marquardt's testimony regarding the circumstances of the *second* altercation unreliable or incredible. Defendant wholly fails to explain why.

Defendant also notes that Marquardt assertedly testified that: he saw defendant's and Bolger's autos pull over to the side of the road before the second altercation; was unable to hear anything; Bolger cut defendant off; defendant was forced to stop behind Bolger; he observed the altercation from a distance; he saw Bolger approach defendant with "something" in his hand. Defendant characterizes this testimony as "vague" and as containing nothing which indicates that he committed murder. Similarly to his reliance on Marquardt's failure

to see the first altercation in its entirety, however, defendant fails to explain specifically why either Marquardt's cited or entire testimony was "vague." To the extent that we can infer the reasons for that conclusion, we disagree.

Specifically, we do not see why Marquardt's testimony that he could not hear what defendant was saying during the second altercation but could hear him speaking loudly, which was in fact his testimony, renders his testimony as to what he *saw* "vague."

Moreover, that Marquardt saw the second altercation from what defendant characterizes as "a distance" does not render vague or suspect his testimony as to what occurred during that altercation. The "distance" to which defendant refers was less than two car lengths from where Marquardt sat in his car. In addition, Marquardt testified, and defendant agreed, that the area where the cars were stopped was well lit.

Finally, Marquardt did not merely testify that he saw "something" in Bolger's hand, contrary to defendant's characterization of Marquardt's testimony. Rather, he testified, without being contradicted or impeached by the defense in any way, that he saw Bolger holding a drinking glass. Significantly, this testimony was corroborated by Officer Harder's testimony that, upon arriving at the scene of the shooting, he found a plastic drinking cup about three feet away from Bolger's body. It was also corroborated by a photograph, admitted into evidence, taken of the scene after the shooting which shows such a cup under Bolger's auto. In addition, Marquardt testified that he did not see Bolger holding a knife at any time during the night. Admittedly, the fact that Marquardt did not see the first altercation in its entirety might have required the jury to discount that testimony to the extent that it related to that altercation. However, defendant does not explain why the jury was required to reject that testimony to the extent that it related to the second altercation. Significantly, Marquardt's testimony in that regard was also corroborated by the testimony of Officer Smitka that he found a knife in Bolger's jacket pocket and that the knife was not "operational."

After reviewing the facts of both altercations with Bolger, essentially as testified to by defendant, defendant concludes that they clearly indicated he had a reasonable belief that his life was in danger and, thus, in the need to use deadly force in self-defense. Specifically, defendant emphasizes the following facts in support of a finding that his belief in the need to use deadly force was reasonable: (1) Bolger was 23 years old, 6 feet 1 inch tall and weighed 245; (2) defendant was 44 years old, 5 feet 7 inches tall and weighed 145; (3) Bolger was

legally intoxicated at the time; (4) Bolger twice blocked defendant's passage then approached and threatened to kill him; (5) Bolger had previously struck defendant twice and displayed a knife; and (6) Bolger exited his auto with something shiny in his hand.

■ In determining a defendant's right to use deadly force in self-defense, the issue is whether the defendant, when he used such force, actually and reasonably believed he was threatened with unlawful force that could have imminently caused him death or great bodily harm. (*People v. Daily* (1979), 79 Ill. App. 3d 928, 398 N.E.2d 923.) Where both criteria are met, a defendant will be exonerated from all criminal culpability. On the other hand, where the defendant has an actual but unreasonable belief in the need to use such force in self-defense, the proper verdict is voluntary manslaughter. Lastly, where the defendant lacks an actual belief in the need to use such force, the proper verdict is murder. See *People v. Lockett* (1980), 82 Ill. 2d 546, 551, 413 N.E.2d 378.

■ Moreover, a defendant's perception of danger and knowledge of specific facts bearing thereon are material and relevant to the jury's assessment of his belief that deadly force was necessary. (See *People v. Evans* (1982), 104 Ill. App. 3d 598, 432 N.E.2d 1285.) However, the defendant's perception of danger is not alone dispositive of whether the use of deadly force was legally justified. Rather, the issue whether an otherwise criminal act is justified as self-defense turns on all of the surrounding facts and circumstances. Where there is a conflict in the evidence as to those facts and circumstances, a jury is not compelled to believe the defendant's exculpatory version. See *Evans*, 104 Ill. App. 3d 598, 432 N.E.2d 1285.

■ In contrast to defendant's version of the events after the first altercation with Bolger, the State's evidence tended to show that: (1) defendant precipitated the second altercation by pursuing Bolger; (2) when shot, Bolger was walking toward defendant with a drinking cup rather than a knife in his hand; (3) the lighting conditions were such as to allow defendant to perceive the foregoing fact; (4) when shot, Bolger had gotten no closer than six feet from defendant; (5) defendant approached Bolger while holding the gun behind his back in such a way as to hide the gun from Bolger's view; and (6) defendant fled the scene and secreted the weapon used to kill Bolger. Defendant has not convinced us that the jury was not entitled to rely on this evidence, which tended to show that defendant's shooting of Bolger was premeditated rather than an act of self-defense. That is, the issue of self-defense being a question of fact for the jury, defendant has not convinced us that the evidence was so unreasonable, improbable or

unsatisfactory as to raise a reasonable doubt of his guilt. See *People v. Ellis* (1982), 107 Ill. App. 3d 603, 437 N.E.2d 409; *People v. March* (1981), 95 Ill. App. 3d 46, 419 N.E.2d 1212.

Nor do we find the cases upon which defendant relies of any assistance to him. Unlike the situation in *People v. Walker* (1965), 55 Ill. App. 2d 292, 204 N.E.2d 594, it cannot be said here that " 'from the time the affray began until [the victim] was shot and killed there was not the slightest pause in the activities of the two men engaged, and not the slightest opportunity offered [defendant] to deliberate or reason in regard to the matter.' " (Emphasis deleted.) *Walker*, 55 Ill. App. 2d at 299.

■ Further unlike the situation here, in *People v. Honey* (1966), 69 Ill. App. 2d 429, 271 N.E.2d 371, the defendant's testimony was the only evidence relating to his perception of the danger confronting him, the existence of a belief in a need to use deadly force and the reasonableness of such a belief. In such cases, the defendant's testimony, if credible, will be dispositive of his right to use deadly force. However, that is not the case where, as here, the defendant's testimony pertaining to his perceptions or subjective belief in the need to use deadly force is contradicted or impeached by other direct or circumstantial evidence.

*People v. White* (1980), 87 Ill. App. 3d 321, 323, 409 N.E.2d 73, counsels, *inter alia*, that a person threatened with physical harm "is not in a contest governed by established rules enforced by an on-the-scene umpire." However, the *dicta* from *White* which includes the foregoing advice and which defendant quotes at length is of no avail to him given that it also includes a recognition that a defendant must have reasonable grounds to believe himself in apparent danger. In *White*, there was no testimonial evidence tending to contradict the defendant's testimony that the victim was brandishing a knife when he was shot, *i.e.*, contradicting the defendant's perception of the danger posed by the victim. Thus, the fact that no knife was, in fact, found at the scene did not preclude the appellate court from concluding that defendant had reasonable grounds for using deadly force. Here, similarly to *White*, the defendant's testimony implied a belief, however mistaken, that Bolger was brandishing a knife. However, here, unlike *White*, there was also testimonial evidence tending to show that defendant could not, in fact, have held such a belief.

■ Ultimately, viewing the evidence in the light most favorable to the State, as we are required to (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453), we believe that a reasonable jury could have found therefrom that defendant did not actually believe it was neces-

sary to use deadly force against Bolger at the time he did so. Therefore, we cannot disturb the jury's verdict. This conclusion is also dispositive of defendant's contention that his belief in the need to use deadly force was, at most, unreasonable and that he was therefore guilty of voluntary manslaughter, not murder.

Defendant lastly contends that the trial court erred in failing to specifically instruct the jury, *sua sponte*, that the State had the burden of disproving beyond a reasonable doubt his affirmative defenses of self-defense and voluntary manslaughter, based on an unreasonable belief in the need to use deadly force. Defendant's contention is grounded upon *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, which he asserts is retroactively applicable to this case.

In the two cases involved in *Reddick*, the defendants, like defendant here, asserted the affirmative defenses of self-defense and voluntary manslaughter to murder charges. In each case, as in this case, the jury received Illinois Pattern Jury Instructions, Criminal, No. 7.02 (2d ed. 1981) (IPI Criminal 2d), on the State's burden of proof to sustain a murder charge. They also received IPI Criminal 2d No. 7.04, on the offense of voluntary manslaughter based on provocation, and, like the jury here, No. 7.06, on the same offense based on an unreasonable belief in a justified use of force. IPI Criminal 2d Nos. 7.04 and 7.06 instruct the jury that the State has the burden of proof of the offense of voluntary manslaughter.

The *Reddick* court concluded that the foregoing instructions, when read together, misstated the burdens of proof on the issues of whether a defendant acted under an intense passion, or unreasonable belief of justification, where such theories were offered as defenses to murder charges. The court thus held that, to obtain a murder conviction in cases where the defendant adduces sufficient evidence to raise the affirmative defense of voluntary manslaughter based on provocation or, as in this case, an unreasonable belief in justification, the State has the burden of *disproving* the existence of provocation or an unreasonable belief in justification beyond a reasonable doubt and that a jury should be so instructed. The *Reddick* court also agreed with one of the *Reddick* defendants that the trial court failed to instruct the jury that the State had the burden of disproving self-defense, *i.e.*, of proving that the defendant was not justified in using deadly force.

Even assuming that the instant issue is properly before this court, contrary to the State's arguments and, further, that *Reddick* is applicable here, *Reddick* does not require a reversal for the trial court's failure to instruct the jury as defendant asserts. The trial court's failure to instruct the jury on the State's burdens of disprov-

ing self-defense and voluntary manslaughter, even if error, was harmless beyond a reasonable doubt. It was harmless because the evidence of defendant's guilt of the offense of murder, *i.e.*, of his lack·of any belief in the need to use deadly force, was so clear and convincing that the trial result would not have been different with such instructions. (*People v. Carter* (1988), 177 Ill. App. 3d 593, 600, 532 N.E.2d 531; *People v. Skipper* (1988), 177 Ill. App. 3d 684, 690, 533 N.E.2d 44; *People v. Bailey* (1986), 141 Ill. App. 3d 1090, 1104, 490 N.E.2d 1334; see also *People v. Fierer* (1988), 124 Ill. 2d 176, 187, 529 N.E.2d 972.) Defendant was not prejudiced by the failure to instruct the jury as contended.

For all of the foregoing reasons, we affirm defendant's murder conviction.

Affirmed.

CERDA, P.J., and WHITE, J., concur.