THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY MOLETERNO, Defendant-Appellant.

First District (5th Division)   No. 1—92—0902

Opinion filed September 24, 1993.

Genson, Steinback, Gillespie & Martin, of Chicago (Edward Genson and Leonard Goodman, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Robert Scott, and Sharon D. Opryszek, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Defendant was convicted of first degree murder by a jury and sentenced to 20 years' imprisonment. This court affirmed his conviction in *People v. Moleterno* (1990), 199 Ill. App. 3d 15, 556 N.E.2d 703. Defendant subsequently filed a petition for post-conviction relief pursuant to section 122—1 of the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 122—1), which alleged that his trial counsel was ineffective because he failed to present evidence of the decedent's violent behavior which would have supported defendant's claim of self-defense, and failed to obtain and introduce the murder weapon at trial for impeachment purposes. In the alternative, defendant contended that the gun, which was unavailable during trial, constituted newly discovered evidence which warranted a new trial. The trial court denied defendant's petition without an evidentiary hearing and defendant now appeals. For the reasons set forth below, we affirm the circuit court.

FACTS

Defendant, Jeffrey Moleterno, and the deceased, Timothy Bolger, were involved in two traffic altercations on the night of February 3, 1987, which resulted in defendant shooting and killing Bolger. Those facts relevant to defendant's post-conviction petition are as follows.

Russell Marquardt, the State's chief witness at trial, testified that on the evening of February 3, 1987, he was driving northbound on Central Avenue sometime after 8 p.m. At the intersection of Central and Eastwood Avenues, he saw two cars stopped facing north in traffic. A Cadillac, driven by Bolger, was stopped in the roadway in front of the defendant's Buick. Marquardt stated that the lighting conditions were good. He saw defendant standing next to his open car door arguing with Bolger, who was standing on the other side of the door pointing his finger at defendant. He did not see any weapon in Bolger's hand.

After Marquardt passed them and continued north on Central for approximately two blocks, Bolger's auto overtook him on the right. Bolger's car was not speeding or weaving in and out of traffic. Approximately two blocks farther north on Central, at the intersection of Central and Higgins, Bolger signaled for a left turn and then entered the appropriate lane. Marquardt followed suit. At this time, there was another car between his car and Bolger's.

Bolger turned left and headed west on Higgins, the intervening car proceeded through the intersection, and Marquardt then began his left turn onto Higgins. As Marquardt was in the midst of his turn, defendant's car sped around him on the right, tires screeching. Marquardt was forced to slow down to avoid colliding with defendant's auto. Defendant followed Bolger, flashing his high beams on and off. About 200 yards west of the Central Avenue intersection, Bolger stopped his car in traffic. Defendant pulled within five or six feet of Bolger's car and Marquardt then stopped his car behind defendant's.

Marquardt stated that the lighting conditions at the scene were good. Defendant got out of his car and began pointing at Bolger with his left hand while holding a chrome-plated gun behind his back with his other hand. Defendant moved toward Bolger's auto while yelling at him. Bolger got out of his car holding a drinking glass, from which he took a sip, and proceeded to the rear of his car. Defendant continued to move toward Bolger, and when they were six feet apart, defendant, who had never revealed the gun to Bolger prior to this point, pivoted, pointed the gun at Bolger's chest and fired. Defendant

then ran back to his car, turned his headlights off and fled. Marquardt subsequently identified defendant in a lineup.

On cross-examination, Marquardt admitted that: (1) he had assumed defendant and Bolger were arguing when he first saw them; (2) he did not know the length, cause or subject of the first altercation; and (3) he did not hear everything that was said during the second altercation.

In addition to Marquardt, the State called two police officers. Officer Edmond Harder testified that when he arrived at the scene he saw a plastic drinking cup and straw about three feet from Bolger's body, which was lying near the rear of his Cadillac. Officer Robert Smitka testified that he recovered a NATO military knife that "wasn't really operational" from the left sleeve pocket of the jacket Bolger was wearing.

Defendant testified on his own behalf that on the night in question he was driving north on Central Avenue when he noticed Bolger's car swerving in and out of traffic. Bolger's car came to a stop between the two northbound lanes on Central Avenue and defendant then flashed his headlights at Bolger to indicate to Bolger that he could get in front of him. Defendant testified that Bolger proceeded to pull his car into defendant's lane, stopped and exited his car, and began to ask in a profane manner why defendant was flashing his lights. Defendant was trying to explain that he was signaling that it was safe for Bolger to enter his lane when Bolger slapped him, knocking his eyeglasses off. Bolger then brandished a knife and warned defendant that if he ever flashed his lights at him again, he would kill him.

They proceeded north on Central Avenue in their respective cars and were side-by-side at the intersection of Central and Higgins. Defendant explained that he was concerned that they were approaching a point where Central Avenue narrowed from two lanes into one and that he would have to yield to Bolger. Attempting to avoid further trouble, defendant ran the red light at Higgins and turned left in front of Bolger's car from the right lane. Bolger also turned left, almost simultaneously with defendant, passed defendant on Higgins and then cut him off.

Bolger got out of his car and came towards defendant, holding something that "glinted" in his hand. Defendant got out of his car and said that he did not want any trouble and Bolger responded profanely that he was going to kill defendant. Defendant then stepped back and shot Bolger with a gun that he had in his back pocket; Bolger turned and stepped back towards his car. Fearing that Bolger

was retrieving something from his trunk, defendant ran to his auto and drove home.

Defendant was subsequently convicted by a jury of first degree murder and sentenced to 20 years' imprisonment. After his conviction was affirmed on appeal (*People v. Moleterno* (1990), 199 Ill. App. 3d 15, 556 N.E.2d 703), he filed this petition for post-conviction relief which alleged that his trial counsel was ineffective in that he failed to introduce evidence of Bolger's violent nature and failed to obtain and use the murder weapon during trial to impeach Marquardt's testimony. In the alternative, defendant argued that the gun constituted newly discovered evidence which warranted a new trial.

Attached to his petition were several affidavits. The first was from Donna DuMelle, who worked as a part-time bartender from 1983 through 1986 in a bar frequented by Bolger. In her affidavit, she stated that Bolger was a regular customer at the bar until he was banned from the premises in 1986. Bolger was a pleasant person when sober, but became violent and abusive after he had a couple of drinks. She stated that Bolger was an alcoholic and was the only person with whom she had problems during the four years that she worked there.

DuMelle attested to the fact that Bolger had to be removed from the bar by the doormen on more than one occasion due to his behavior and would often put up a fight. DuMelle feared retaliation by Bolger whenever he was kicked out of the bar on the basis of his abusive behavior towards her. On one occasion, Bolger threw a drink in her face and attempted to jump over the bar and attack her because she refused to serve him after closing. A second time, Bolger threw a heavy glass ashtray at her head when she refused to serve him. She stated that when she read a newspaper account of the shooting involving Bolger which described him as having a bright future, she and several others wrote a letter to the editor of the newspaper which published the story, expressing their objections to the story. They signed the letter, "All those who knew and feared Tim Bolger."

DuMelle said that she was contacted by a person representing defendant in late 1987 at which time she related all the aforementioned information. The attorney told her that he might want to use her at trial. She was never again contacted or subpoenaed to testify.

Defendant also attached an affidavit of a friend, Albert Perry. In his affidavit, Perry stated that on the evening of February 3, 1987, defendant's wife came to his house in Chicago, told him that defendant had just shot someone, and gave him a small black .25-caliber Beretta handgun. Perry put the gun in the back of his furnace where it

remained until 1990. Perry stated that at that time defendant called him from prison and asked him about the gun. Following defendant's instructions, he returned the gun to defendant's wife.

The affidavit of John Leonard, a Chicago police officer, was also attached to defendant's petition. In his affidavit, Leonard stated that he had witnessed a conversation between defendant, defendant's wife and Albert Perry on the day after the shooting at which time defendant asked Perry if he still had the gun and Perry responded that he had "gotten rid of it" and would not say where it was. As a result of his refusal, Leonard swore out a complaint against Perry for obstruction of justice.

The circuit court dismissed defendant's petition without an evidentiary hearing, finding that there was no reasonable probability that the use of this evidence at trial would have changed the outcome.

OPINION

Defendant's first contention on appeal is that the trial court erred in dismissing his post-conviction petition which alleged ineffective assistance of counsel without an evidentiary hearing. In a post-conviction proceeding, the burden is on the defendant to establish a substantial deprivation of rights under either the United States or Illinois Constitution. (*People v. Silagy* (1987), 116 Ill. 2d 357, 507 N.E.2d 830.) The trial court's decision to grant or deny a request for post-conviction relief will not be overturned unless manifestly erroneous. (*People v. Fernandez* (1991), 222 Ill. App. 3d 80, 583 N.E.2d 627.) The petitioner is not entitled to an evidentiary hearing on his petition as a matter of right in that summary disposition of a nonmeritorious petition is permitted under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*). (*People v. Jackson* (1987), 161 Ill. App. 3d 573, 515 N.E.2d 219; see also *People v. Griffin* (1992), 148 Ill. 2d 45, 592 N.E.2d 930.) To merit an evidentiary hearing, the defendant's petition must make a substantial showing that defendant's constitutional rights have been violated which must be supported by affidavits or other evidence which allege specific facts. (*People v. Janis* (1992), 240 Ill. App. 3d 805, 608 N.E.2d 359.) If these facts, taken as true (*People v. Mendez* (1991), 221 Ill. App. 3d 868, 582 N.E.2d 1265), do not indicate that defendant's rights have been violated, an evidentiary hearing is unnecessary. See *People v. Spreitzer* (1991), 143 Ill. 2d 210, 572 N.E.2d 931.

Specifically, defendant argues that his trial counsel was ineffective in that he did not call Donna DuMelle as a witness to demonstrate

Bolger's violent behavior and by not obtaining and using the murder weapon at trial to impeach Marquardt as to the color of the gun.

A claim for ineffective assistance of counsel will be sustained if (1) "counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to 'deprive the defendant of a fair trial, \*\*\*' [and] 'that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068.) There is a strong presumption that counsel was competent and his performance will be examined as of the time of trial, not in hindsight. (*People v. Whittaker* (1990), 199 Ill. App. 3d 621, 557 N.E.2d 468.) Counsel's competence will not be appraised on matters involving the exercise of judgment, discretion or trial tactics. *People v. Lovitz* (1984), 127 Ill. App. 3d 390, 468 N.E.2d 1010.

■ Trial counsel's failure to call DuMelle does not indicate that his performance was so deficient as to affect the outcome. Initially, we note that DuMelle's affidavit only sets forth two specific instances to support her opinion. Even assuming that those instances were detailed enough to be relevant and reliable, the defendant would only gain a minimal advantage from the introduction of this evidence. This evidence could not be used to show that defendant had a reasonable fear of Bolger because defendant was admittedly unaware of these instances at the time of the shooting.

The only potential use for this evidence is to show Bolger's propensity to become violent when he drank, thus supporting defendant's contention that Bolger was the aggressor in their encounter. The conclusion that Bolger was the aggressor, however, is directly rebutted by substantial evidence which was offered at trial, particularly the eyewitness testimony of Marquardt and the physical evidence found at the scene. In this respect, we note that Marquardt's testimony was unequivocal that after the first altercation between Bolger and defendant, it was defendant who pursued Bolger. It was defendant who first got out of his car and started to scream at Bolger. It was defendant who exited his car with a weapon concealed behind his back at the ready.

Moreover, Marquardt's testimony was corroborated by the physical evidence found at the scene: a drinking cup was found next to Bolger's body and the only weapon found at the scene was a nonoperational knife that was found unopened in Bolger's jacket pocket.

See *People v. Spreitzer*, 143 Ill. 2d at 219-20 (commenting on inconsistency between the testimony of witness who trial counsel failed to call and that of other witnesses offered at motion to quash in determining post-conviction petition alleging ineffective assistance of counsel was properly dismissed without an evidentiary hearing; the testimony of witness did not "provide the probability of doubt that could lead to a retrial"); *Lovitz*, 127 Ill. App. 3d at 397 (defendant's right to effective counsel was not violated by trial counsel's failure to call barmaid to testify to decedent's intoxication at the time of the shooting when such testimony was "not 'of such a conclusive character that it would probably change the result on retrial.' [Citation]").

In order for DuMelle's testimony to create a reasonable probability of a different outcome, it would have to call into question the aforementioned testimony of a disinterested eyewitness whose testimony was corroborated by the other evidence offered at trial, including, in many respects, the defendant's own testimony. We do not think that the failure to bring out these two instances prejudiced defendant in light of the substantial evidence offered at trial, which we found to be "clear and convincing" in affirming defendant's conviction on direct appeal. (See *People v. Moleterno* (1990), 199 Ill. App. 3d 15, 24, 556 N.E.2d 703.) As such, there is no reasonable probability that the outcome of defendant's trial would have been different had defendant's trial counsel sought the admission of this evidence. See *People v. Dean* (1992), 226 Ill. App. 3d 465, 589 N.E.2d 888; *Spreitzer*, 143 Ill. 2d at 223.

In addition to the fact that there was no reasonable probability that the omission of the evidence affected the outcome, we would also note that trial counsel's decision not to call this witness may well have been a matter of trial strategy. The decision as to whether "to call a witness is a tactical and strategical decision in which defense counsel is given wide latitude in making decisions." (*People v. Davis* (1992), 228 Ill. App. 3d 123, 130, 592 N.E.2d 464.) DuMelle stated that she had been contacted by defendant's trial counsel prior to trial and had related all of the information contained in her affidavit to him. This shows that trial counsel knew of DuMelle's testimony prior to trial and that his failure to call her was not a mere oversight, but was the result of a conscious decision. (See *Whittaker*, 199 Ill. App. 3d at 628-29 ("[c]hoices which are made on the basis of strategic considerations after a thorough investigation of all matters relevant to plausible options have traditionally been considered to be unchallengeable"); see also *People v. Consago* (1988), 170 Ill. App. 3d 982, 524 N.E.2d 989 (defendant failed to overcome strong presumption of ef-

fective assistance of counsel; counsel's decision not to call eyewitness was matter of strategy when counsel knew of witness' testimony prior to trial and had him listed as a potential witness).) Under these circumstances, the trial court did not err in dismissing defendant's petition without an evidentiary hearing. See *Jackson*, 161 Ill. App. 3d at 585 (affirming trial court's dismissal of a post-conviction petition without an evidentiary hearing where defendant did not demonstrate that there was a reasonable likelihood that the outcome of the case would have been different).

■ We also conclude that an evidentiary hearing was not necessary to determine whether defendant's trial counsel was ineffective in not obtaining and using the murder weapon to impeach Marquardt. We note at the outset that defendant gave the gun to a friend to dispose of, thereby limiting his own counsel's potential use of the weapon. Moreover, even if the gun had been readily accessible to trial counsel, it could very well have been a decision of trial strategy not to focus the jury's attention on the very gun defendant used to kill the victim, particularly when the victim was not carrying a gun at the time he was shot. (See *People v. Davis* (1992), 228 Ill. App. 3d 123, 128, 592 N.E.2d 464 (trial counsel's decision not to use photo and exhibit "is clearly a strategic or tactical decision that will not be disturbed on review").) We recognize that a strategy to minimize defendant's possession and use of a gun would be consistent with the defense's portrayal of the defendant as a man who was afraid of the much younger and larger Bolger.

Additionally, there is no potential prejudice to defendant's case resulting from the failure to use this gun to impeach Marquardt. First, the color of the gun was not a material issue at trial. In his own testimony, defendant admitted shooting Bolger at the time and place where the incident occurred; there was never any debate over whether defendant actually shot Bolger or which gun he used. In this sense, that a black gun was used instead of a chrome-plated gun is of minor relevance. See *People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481 (trial counsel's failure to call two witnesses was not ineffective where their testimony possessed only minor impeachment value).

Marquardt's testimony was corroborated by the defendant's testimony concerning the earlier encounter, the position of the vehicles at the time of the shooting, the position of Bolger's body, the presence of the drinking cup and straw close to the body, that Bolger's knife was found unopened in his jacket pocket and that the defendant drew the gun from behind his back. In light of this substantial corroboration of

Marquardt's testimony by the physical evidence and other testimony offered at trial, we cannot say that the trial court erred in denying defendant's petition without an evidentiary hearing where the use of the gun could only impeach Marquardt on a minor point. *Flores*, 128 Ill. 2d 66, 538 N.E.2d 481; *People v. Martin* (1983), 112 Ill. App. 3d 486, 445 N.E.2d 795 (failure to use available impeachment evidence to impeach a witness' description does not constitute incompetence).

■ Defendant's next contention on appeal is that the gun constitutes the type of newly discovered evidence which had a reasonable probability of changing the outcome of his trial. A trial court's denial of defendant's request for a new trial based on newly discovered evidence is within the circuit court's discretion and will not be reversed absent a manifest abuse of that discretion. (*People v. Blount* (1991), 220 Ill. App. 3d 732, 580 N.E.2d 1381.) To warrant a new trial, "the evidence must be of such a conclusive character that it would probably change the result at the new trial; the evidence must be material and not merely cumulative; the evidence must have been discovered after the trial and must be of such a character that it could not have been discovered before trial in the exercise of due diligence." (*People v. Washington* (1992), 230 Ill. App. 3d 1002, 1007-08, 596 N.E.2d 114; *People v. Geneva* (1990), 196 Ill. App. 3d 1017, 554 N.E.2d 556.) Motions for a new trial based on newly discovered evidence are not looked upon favorably by courts and are given close scrutiny "in order to prevent fraud which parties may be tempted to use as a last resort to avoid an adverse verdict." *Washington*, 230 Ill. App. 3d at 1007; *Clay*, 211 Ill. App. 3d at 304.

As previously discussed with respect to defendant's claim that he received ineffective assistance of counsel, the omission of this evidence was not outcome determinative. The introduction of the gun is collateral and not material to the issue of whether defendant acted in self-defense. At best, the gun would merely impeach Marquardt's testimony on a minor point, and it is well established that "[n]ewly discovered evidence, the effect of which is to discredit, contradict and impeach a witness does not afford a basis for the granting of a new trial." *People v. Clay* (1990), 211 Ill. App. 3d 291, 323, 570 N.E.2d 335; see also *People v. Harris* (1987), 154 Ill. App. 3d 308, 506 N.E.2d 1353 (witness testimony that victim possessed and was firing gun at defendant was not the type of newly discovered evidence which provides a basis for a new trial where such testimony only affects the credibility of the State's witnesses and otherwise lacks probative force).

Moreover, in addition to the fact that this evidence was not sufficiently consequential, we would disagree with defendant's characterization of this evidence as newly discovered. Regardless of Perry's statement, the simple fact remains that defendant gave the gun to Perry through his wife with instructions to dispose of it. Two factors are demonstrated by defendant's actions in this respect. First, defendant played an integral role in the unavailability of the weapon; second, defendant knew of the existence of the gun and in whose possession it was well in advance of trial. (See *People v. Chew* (1987), 160 Ill. App. 3d 1082, 513 N.E.2d 1099 (defendant appeared to know of "newly discovered evidence" prior to trial); see also *People v. Bracey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685.) In light of these two factors, the gun cannot be considered "newly discovered evidence" warranting a new trial.

The case of *People v. Jones* (1975), 26 Ill. App. 3d 78, 325 N.E.2d 56, is analogous. There, defendant admitted shooting the victim, but claimed he acted in self-defense. The prosecutor emphasized in closing argument that the victim had no gun as defendant had claimed. After the jury returned a guilty verdict, defendant filed a motion for a new trial based on newly discovered evidence in the form of the testimony of a witness who attested to the presence of the gun. This witness told defendant what happened to the gun prior to trial and this information was relayed to defendant's attorney, who interviewed the witness. The witness, who was incarcerated, refused to cooperate with defendant's attorney. In denying defendant's motion, the court noted:

> "Both defendant and his lawyer knew that [the witness] had made a statement favorable to them and that he was available for subpoena. *** The only change in the situation from time of trial to time of motion was that the witness became more cooperative. His version of the occurrence did not change. This evidence was not newly discovered." *Jones*, 26 Ill. App. 3d at 82-83.

Like the witness in *Jones*, Perry here was initially uncooperative. Like the information involved in *Jones*, the information at issue here, the color of the gun, was also within the knowledge of defendant. He could have testified to this fact when he took the stand. His wife could have testified to the color of the gun as she was the intermediary between her husband and Perry. Perry could have been subpoenaed and asked the color and whereabouts of the gun. In sum, the color of the gun cannot be considered "newly discovered." See *Jones*, 26 Ill. App. 3d 78, 325 N.E.2d 56; see also *Bracey*, 51 Ill. 2d 514, 283 N.E.2d 685; *Chew*, 160 Ill. App. 3d 1082, 513 N.E.2d 1099.

In making our decision, we are mindful that allowing a new trial based on evidence of which the defendant was aware and which he caused to be hidden would be contrary to the very concerns underlying the requirement that courts give such requests close scrutiny. (See *Washington*, 230 Ill. App. 3d at 1007; *Clay*, 211 Ill. App. 3d at 304.) It would be incongruous, to say the least, to allow defendant to bury a piece of evidence within his control, take his chances at trial, and then if convicted, unearth the very same evidence and ask for a second chance.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

MURRAY and COUSINS, JJ., concur.