AMY KESSLING, a Minor, by her Mother and Next Friend, Mary Kessling, Plaintiff-Appellant, v. UNITED STATES CHEERLEADERS ASSOCIATION, f/k/a U.S.C.A. Camps All American, Inc., Defendant-Appellee.

Third District    No. 3—94—0635

Opinion filed July 18, 1995.—Modified on denial of rehearing September 27, 1995.

A. Denison Weaver, Ltd., of Chicago (Thomas J. Gorman, of counsel), for appellant.

James M. Rooney and Martin H. Alpert, both of Arnstein & Lehr, of Chicago (Arthur L. Klein, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Amy Kessling (Amy) filed this action in the circuit court of Will County seeking damages for injuries sustained at a summer camp operated by the defendant, United States Cheerleaders Association. Amy filed the action through her mother and next friend, Mary Kessling (Mary). The jury returned a general verdict for the defendant and special interrogatories indicating that both Amy and the defendant proximately caused Amy's injuries. The trial court entered judgment on the general verdict.

Amy raises three contentions on appeal. First, she claims that the trial court should have entered judgment on the special interrogatories instead of the general verdict. Second, she argues that the general verdict is contrary to the manifest weight of the evidence. Finally, she argues that the trial court erred when it dismissed that

portion of the complaint which sought medical expenses incurred when Amy was a minor. Based on our review of the record, we conclude that the trial court properly entered judgment in favor of the defendant based upon the general verdict. Because of our conclusion, we do not need to address the remaining issue.

## I. FACTS

The defendant is a private corporation which teaches cheerleading techniques and sponsors competitions. Amy was a member of her junior high school's cheerleading squad. In July 1987, 13-year-old Amy participated in one of the defendant's summer camps at Northern Illinois University.

During a competition, Amy attempted to execute a "toe pitch." This acrobatic maneuver requires a "base girl" to clasp her hands together and allow the other cheerleader to place one of her feet in the clasped hands. The cheerleader and the base girl execute a count. At the end of the count, the base girl hoists her hands and the cheerleader pushes off the ground with her other foot. The cheerleader then executes a back flip while in the air and lands on her feet. However, Amy could not complete the requisite maneuvers when she and her base girl, Lakeesha Drain (Lakeesha), attempted the toe pitch. As a result, Amy landed on her knee and fractured her kneecap.

Through Mary, Amy filed a one-count complaint against the defendant in the circuit court of Will County on July 25, 1989. She charged the defendant with, among other things, negligently failing to provide help in executing maneuvers, failing to teach safety techniques, and failing to determine Amy's skill level. Included in the complaint was a paragraph indicating that Amy had incurred substantial medical expenses. Amy was 15 years old when the complaint was filed.

The case went to trial on May 16, 1994. Pauline Hess, the defendant's chief executive officer, testified that the defendant offered instruction in cheerleading, tumbling and mounts. A toe pitch is an example of a mount. However, the defendant did not teach the toe pitch or any other aerial stunts to participants. Furthermore, camp participants were not required to learn or execute mounts. The competitive portions of the camps were purely optional. Participants independently developed and rehearsed their own competition routines.

Hess conceded that neither the defendant nor its employees determined Amy's skill level or the skill level of any other participant. She also said that the use of a spotter would not have prevented Amy's accident because a spotter cannot touch a person executing a

toe pitch. A "spotter" is a person who helps a tumbler land safely when engaged in aerial stunts.

Jennifer Kohlar attended the defendant's camp with Amy. She said that individual team members were expected to spot their own teammates. She confirmed that the camp instructors would spot if requested. However, Kohlar also said that the instructors never required the use of spotters.

Amy testified that she was injured during her voluntary participation in competition at the camp. She placed her foot in Lakeesha's hands to prepare for the toe pitch and began the count. As she hoisted Amy, Lakeesha exclaimed, "My hands!" As she was in the air, Amy realized that Lakeesha's hands were not properly set for the maneuver.

On cross-examination, Amy conceded that the competition was voluntary. Also, Amy had previously testified that Lakeesha indicated her hands were not ready *before* they began the toe pitch. Amy maintained that by the time she learned of the problem, she was unable to stop the maneuver.

Lakeesha testified that her hands were sweaty at the time they executed the maneuver. After Amy struck her knee, she got up and finished the routine. At the hospital, Lakeesha told Amy that her hands had slipped during the lift.

Ruth Loveless testified as the plaintiff's expert witness. In her opinion, the defendant was negligent when it failed to test Amy's skill level. Loveless also said that the toe pitch was too dangerous for young cheerleaders to do. Finally, she said that the defendant should have provided spotters to help her land safely.

Dr. Gerald George was the defendant's expert witness. He reviewed the depositions of Amy and Lakeesha. The doctor drew the following conclusions from the depositions: (1) Amy had the requisite ability to perform the toe pitch; (2) she failed to achieve the height necessary to complete the back flip; and (3) she failed to land properly.

The depositions also revealed that Lakeesha told Amy her hands were sweaty before the girls began their counts. In addition, Amy's foot slid in Lakeesha's hands during their preparation for the maneuver. Based on these facts, Dr. George testified that there was time to abort the stunt and that Amy could have decided not to execute the toe pitch. Therefore, he concluded that Amy failed to exercise proper judgment in determining whether to undertake the maneuver.

At the close of evidence, the defendant tendered three special interrogatories to be given to the jury. Two of the interrogatories are relevant here. They provided as follows:

> "Was there negligence on the part of [Amy] that was the proximate cause of her injuries?"

"Was there negligence on the part of the [defendant] that was the proximate cause of [Amy's] injuries?"

The court also gave three verdict forms to the jury. Two of these forms are relevant here. Verdict form B (form B) indicated a verdict for Amy with a commensurate reduction for Amy's negligence. Verdict form C (form C) contained a verdict for the defendant.

Shortly after beginning their deliberations on May 20, 1994, the jury sent a written question to the trial judge. The jurors sought guidance because they had written on the wrong verdict form. The jurors also said that they had reached a verdict. The parties agreed to permit the jury to return its verdict without a response to the question.

The jury returned forms B and C to the judge. Amy's damages were itemized on form B. However, the jury attributed 51% of the negligence to Amy. None of the jurors' signatures appear on form B. All of the jurors signed form C, which indicated a verdict for the defendant. The jury's affirmative answers to the special interrogatories indicated that both Amy and the defendant were negligent. A poll of the jurors confirmed the general verdict.

Nevertheless, the judge refused to enter a judgment on either the verdict or the interrogatories. On June 1, 1994, the court declared a mistrial. The defendant filed a motion asking the court to reconsider its June 1, 1994, order. On June 13, 1994, the court vacated its previous order and entered judgment on the general verdict. On August 3, 1994, the court denied Amy's post-trial motion. Amy filed a timely notice of appeal on September 1, 1994.

## II. DISCUSSION AND ANALYSIS

### A. CONSISTENCY OF THE GENERAL VERDICT AND THE SPECIAL INTERROGATORIES

Amy argues that the trial court erred when it entered judgment on the general verdict. In support of this argument, Amy claims that the general verdict is inconsistent with the special interrogatories. Therefore, according to Amy, the trial court should have entered judgment on the special interrogatories. We do not agree.

"When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly." (735 ILCS 5/2—1108 (West 1992).) However, special interrogatories and a general verdict are inconsistent only when the answers to the interrogatories are clearly and absolutely irreconcilable with the general verdict. (*Bilderback v. Admiral Co.* (1992), 227 Ill. App. 3d 268, 270, 591 N.E.2d 36, 38.) In determining whether an inconsistency exists, all reasonable presumptions must be exercised in favor

of the general verdict. (*Bilderback*, 227 Ill. App. 3d at 270, 591 N.E.2d at 38.) "When a special interrogatory does not cover all the issues submitted to the jury, and a 'reasonable hypothesis' permits the general verdict to be construed consistently with the answer to the special interrogatory, the general verdict and the special finding cannot be said to be irreconcilably inconsistent, and the special interrogatory will not control." *Powell v. State Farm Fire & Casualty Co.* (1993), 243 Ill. App. 3d 577, 581, 612 N.E.2d 85, 88.

■ Here, a "reasonable hypothesis" indicates that the jury's answers to the special interrogatories do not conflict with the general verdict. The jury found that both Amy and the defendant were the proximate cause of Amy's injuries. The jury also returned a general verdict for the defendant, precluding any recovery to Amy. Therefore, it can be inferred that the jury found Amy was at least 51% negligent and was entitled to no recovery. As a result, we cannot say that the jury's responses to the special interrogatories are clearly and absolutely irreconcilable with the general verdict. Accordingly, the trial court was correct when it entered judgment on the general verdict.

## B. SUFFICIENCY OF THE EVIDENCE

Amy's final contention is that the general verdict is against the manifest weight of the evidence. We find no merit to this argument.

■ On review of a comparative negligence case, the court must determine whether the verdict is against the manifest weight of the evidence. (*Zook v. Norfolk & Western Ry. Co.* (1994), 268 Ill. App. 3d 157, 169, 642 N.E.2d 1348, 1357.) "A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence." (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13.) Based on our careful review of the record, we find the evidence provides an adequate basis for the jury's verdict. Therefore, we conclude that the verdict is consistent with the manifest weight of the evidence.

## III. CONCLUSION

We hold as follows: (1) the trial court properly entered judgment on the general verdict; and (2) the jury's verdict was not against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

SLATER and HOLDRIDGE, JJ., concur.