THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN DAVIS, Defendant-Appellant.
First District (3rd Division)   Nos. 1—87—2482, 1—89—1778 cons.

Opinion filed March 31, 1992.

---

124

Chester L. Blair, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Margaret Iwerebon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:
Defendant Steven Davis was found guilty of robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—1(a)) and burglary of an automobile (Ill. Rev. Stat. 1985, ch. 38, par. 19—1(a)) in a bench trial and sentenced to three years' probation. Defendant was charged along with code-fendant Brian Coleman, who is not a party to this appeal. On appeal, defendant argues that (1) he was denied effective assistance of coun-

sel; (2) he was denied a fair trial when he was not consulted about the nature and circumstances surrounding the substitution of defense counsel; and (3) he did not knowingly and understandingly waive his right to a jury trial. We affirm.

At approximately 5:30 p.m. on November 24, 1986, Carmen DeVivies was driving northbound on Pulaski Road in Chicago, Illinois, when she stopped her automobile for a red light at the intersection of Pulaski and Madison streets. While stopped at the red light, the front passenger window of her automobile was shattered and simultaneously a man reached through the broken window and grabbed onto DeVivies' purse. After a brief struggle, the offender succeeded in wrestling the purse from DeVivies and ran away from the scene of the crime. DeVivies immediately drove away and later called the police. DeVivies testified that she was unable to observe the face of the offender.

James Lemon, a member of two neighborhood crime-watch organizations, was patrolling the intersection of Pulaski and Madison streets along with three other individuals because of the recent increase in "smash and grab" incidents that had occurred at that intersection. From his observation point in the parking lot of a liquor store located 75 feet south of the intersection, Lemon observed defendant smash the front passenger window of DeVivies' red Nissan Sentra and reach into the automobile while codefendant stood two to three feet away surveying the area. After defendant retrieved the purse, Lemon observed defendant and codefendant flee south on Pulaski Road and turn east on Monroe Street. Lemon and the three others chased after defendant and codefendant, but were unable to catch the offenders as they headed eastbound on Monroe Street. Moments later, an unmarked Chicago police vehicle which had been assigned to patrol Pulaski Road for "smash and grab" incidents was flagged down by Lemon. Lemon told the police officers what he and the others had observed and gave them a description of defendant and codefendant.

The police officers began to search for the individuals that Lemon described. When defendant and codefendant spotted the police, they started running northbound on Pulaski Road, but were immediately apprehended. The police officers returned defendant and codefendant to the scene of the crime, where Lemon identified them as the individuals whom he had observed smash the window of the red Nissan Sentra and steal the occupant's purse. A search of defendant and codefendant did not recover any of the stolen items.

The trial court appointed Public Defenders Steven Venit and Paula Lundberg to represent defendant and codefendant in this mat-

ter. When defendant requested a bench trial and codefendant requested a jury trial, separate representation of defendant and codefendant became necessary because of the potential for a conflict of interest involving their differing defenses. Following defendant's jury waiver, Venit, who had been the lead attorney working up both defendant and codefendant's cases, assumed sole representation of codefendant, while Lundberg, Venit's partner at the public defender's office, assumed sole representation of defendant.

Following a bench trial, defendant was convicted of robbery and burglary of an automobile and sentenced to one year's intensive probation followed by two additional years of felony probation. Defendant filed a petition for post-conviction relief, alleging that he was deprived of his right to effective assistance of counsel. Following a hearing, the trial court denied defendant's post-conviction petition. This appeal followed.

Defendant first argues that he was denied his right to effective assistance of counsel as guaranteed by the sixth amendment to the United States Constitution. We disagree. Recently in *People v. Eddmonds* (1991), 143 Ill. 2d 501, 510-11, 578 N.E.2d 952, 956, our supreme court reaffirmed the application of the two-part test enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for evaluating whether a defendant has received effective assistance of counsel. (See also *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Under the *Strickland* test, a defendant must prove in a post-conviction hearing that defense counsel's errors were so objectively incompetent that counsel was not functioning as "counsel" as guaranteed by the sixth amendment. (*Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Furthermore, if defense counsel's incompetence is proven, a defendant must also demonstrate that counsel's deficient performance substantially prejudiced his or her defense so that "but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) After reviewing the record of defense counsel's representation of defendant in its totality, we hold that defendant failed to prove that defense counsel's representation was incompetent.

Defendant argues that defense counsel committed various errors demonstrating the incompetency and ineffectiveness of counsel, including defense counsel's failure to make an opening statement, her limited cross-examination of DeVivies, Lemon and Officer Zielinski, her failure to use any exhibits or photos at trial, her failure to visit

the scene of the crime, her failure to meet with defendant or interview witnesses before trial, her failure to make an argument in support of her motion for a directed verdict, her failure to call defendant's aunt to testify as an alibi witness and her failure to allow defendant to testify in his own behalf. We will address each of these contentions separately.

Defendant first contends that he received ineffective assistance of counsel because defense counsel failed to make an opening statement. This contention is without merit. There is a strong presumption that counsel has performed in a professionally competent manner, and a defense counsel's decision to make or waive an opening statement on behalf of a defendant is a question of judgment in strategy or tactics that will not, in and of itself, demonstrate the ineffectiveness of counsel. (*People v. Whittaker* (1990), 199 Ill. App. 3d 621, 627-28, 557 N.E.2d 468, 472; *People v. Georgev* (1967), 38 Ill. 2d 165, 169, 230 N.E.2d 851, 854.) Only the most egregious of tactical or strategic blunders may provide a basis for a violation of a defendant's right to effective assistance of counsel. *People v. Kubik* (1991), 214 Ill. App. 3d 649, 661, 573 N.E.2d 1337, 1345.

An opening statement is useful to elucidate issues in a jury trial or in a case where the issues are particularly complex. In the present case, however, defendant was not being tried by a jury and the issues were not unduly complex. Moreover, codefendant's counsel made an introductory statement to the court. Thus, any additional statement by defendant's counsel would merely have been repetitive. Accordingly, we conclude that defense counsel's failure to make an opening statement did not violate defendant's right to effective assistance of counsel.

Defendant's second contention is that he received ineffective assistance of counsel because defense counsel failed to effectively cross-examine the State's prosecution witnesses. This contention is also without merit. Our review of the record reveals that defense counsel's cross-examination of the State's prosecution witnesses was sufficiently comprehensive to satisfy an objective standard of competency.

First, during the cross-examination of DeVivies, defense counsel attempted to establish that her ability to view and perceive the crime was impeded by darkness. Additionally, defense counsel elicited from the complaining witness that she could not positively identify defendant as the individual who broke the window of her automobile and stole her purse.

Second, during the cross-examination of Lemon, the only identifying witness presented by the State, defense counsel attempted to un-

dermine his credibility by eliciting from him that because it was 5:30 p.m. and the streetlights had already come on, he could have been mistaken as to defendant's identity. Furthermore, defense counsel elicited from Lemon that there were many people in the area at the time of the offense, and presented the possibility to the trier of fact that the offender could have been someone else other than defendant. Finally, defense counsel extracted from Lemon that the location of his van may have been so far away from the scene of the crime that he could not have been close enough to make a positive identification of defendant.

Third, during the cross-examination of Officer Zielinski, defense counsel elicited from the witness that he did not at any time observe defendant or codefendant in possession of a purse, that none of the contents of DeVivies' purse were found in either defendant's or codefendant's possession, and that he did not witness defendant commit the theft of DeVivies' purse. We, therefore, hold that there is nothing incompetent about defense counsel's cross-examination of the State's prosecution witnesses. Defense counsel attempted to impeach, undermine and obfuscate the witnesses' testimony during their direct and cross-examination. Her questioning was thorough, comprehensive and effective, eliciting responses that raised pertinent questions as to defendant's guilt. Accordingly, we conclude that defense counsel did not fail to vigorously cross-examine the State's prosecution witnesses so as to violate defendant's right to effective assistance of counsel.

Defendant's third contention is that his right to effective assistance of counsel was violated because defense counsel failed to use any exhibits or photos at trial even though a photo of the crime scene taken by codefendant's counsel was available for use at trial. This contention is also without merit. Defense counsel's decision to use or not to use an exhibit or photo is clearly a strategic or tactical decision that will not be disturbed on review. Accordingly, we conclude that defense counsel's decision not to use exhibits or photos at defendant's trial did not violate his right to effective assistance of counsel.

Defendant's fourth contention is that defense counsel's failure to visit the scene of the crime violated his right to effective assistance of counsel. There are circumstances in which we would find that defense counsel's failure to visit the scene of the accident or crime would not meet the objective standard of competence set forth in *Strickland*. In the present case, however, where the facts, legal issues and crime scene are so elementary, we conclude that defendant was not prejudiced by defense counsel's failure to visit the crime scene. Accord-

ingly, defendant's right to effective assistance of counsel was not violated by defense counsel's failure to visit the scene of the crime.

Defendant's fifth contention is that defense counsel's failure to meet with defendant or interview witnesses before trial violated his right to effective assistance of counsel. Defendant testified that he did not meet with or discuss any of the facts of the case with Lundberg before his trial began. Lundberg testified, however, that she first met with defendant in March 1987, more than one month before defendant's trial began, and had interviewed defendant at length about his defense.

Defendant relies on *People v. Wallace* (1982), 106 Ill. App. 3d 580, 435 N.E.2d 1322, a pre-*Strickland* case where the court held that defendant was denied the effective assistance of counsel when he met his attorney for the first time on the day of the trial and proceeded immediately to trial shortly thereafter.

Assuming *arguendo* that we adopt defendant's version that he had never met Lundberg prior to the day of trial, *Wallace* is still distinguishable from the present case. Unlike in *Wallace*, where the attorney had absolutely no familiarity with the facts and legal issues of the case, Lundberg had complete understanding of the factual and legal issues of defendant's case. Lundberg was Venit's partner at the public defender's office and she had been working up the case with Venit. Venit had been to the scene of the crime, interviewed witnesses, taken photographs and otherwise become acquainted with the relevant facts and legal issues involved. Lundberg's familiarity with the case was clearly illustrated by her cross-examination of the State's prosecution witnesses, where she brought out and articulated for the trial court the weaknesses in the State's case against defendant. We, therefore, conclude that defense counsel's failure to meet with defendant or interview witnesses before trial did not violate defendant's right to effective assistance of counsel.

Defendant's sixth contention is that defense counsel's failure to make an argument in support of a directed verdict violated his right to effective assistance of counsel. We disagree. As discussed previously, only the most egregious of tactical or strategic blunders may provide a basis for a violation of a defendant's right to effective assistance of counsel. (*Kubik*, 214 Ill. App. 3d at 661, 573 N.E.2d at 1345.) Defense counsel made a motion for a directed verdict, thus preserving all of defendant's post-trial rights. Accordingly, we conclude that defense counsel's failure to make an argument in support of defendant's motion for a directed verdict does not violate defendant's right to effective assistance of counsel.

Defendant's seventh contention is that defense counsel's failure to call defendant's aunt as an alibi witness violated his right to effective assistance of counsel. This contention is also without merit.

The decision of whether to call a witness is a tactical and strategical decision in which defense counsel is given wide latitude in making decisions. (*People v. Flores* (1989), 128 Ill. 2d 66, 85-86, 538 N.E.2d 481, 485-86; see also *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) Defense counsel testified that she informed defendant's aunt that it could possibly hurt defendant's case if she testified at trial because Officer Zielinski, the arresting officer, had previously testified that defendant was in custody at the time in which she was prepared to testify that defendant was at home with her in her basement lifting weights. We conclude that defense counsel could have reasonably concluded as a matter of trial strategy that defendant's aunt's testimony would not have aided in defendant's case. Accordingly, defense counsel's failure to call defendant's aunt as an alibi witness did not violate defendant's right to effective assistance of counsel.

Defendant's eighth contention is that defense counsel rested defendant's case without calling him to testify in his own defense after he repeatedly asked defense counsel for the opportunity to testify. This contention is also without merit. The trial court ruled following the post-conviction hearing that defense counsel advised defendant that "[I]t was his decision and only his decision whether to testify or not. The defendant on his own elected not to testify." We hold that the trial court's ruling is not contrary to the manifest weight of the evidence.

At the post-conviction hearing, defense counsel testified that she discussed with defendant on numerous occasions whether he should take the stand in his own defense. Defense counsel testified that she thought that argument of the facts would be the best method to create a reasonable doubt as to defendant's guilt and that defendant's testimony, in her opinion, would only be damaging to his case. Defense counsel further testified that she advised defendant that she did not know what probative value defendant's testimony would have since it would be a strict denial of what had happened, but left the choice of testifying up to defendant.

Defendant testified at the post-conviction hearing that he repeatedly asked defense counsel when he was going to be able to testify after she had explained to him that he had a right to testify in his own defense. Defendant further testified that he did not ask the judge if he could testify because defense counsel told him to "be quiet."

We find defense counsel's testimony at the post-conviction hearing to be more credible than defendant's testimony. Defense counsel had more than six years of experience with the public defender's office, including more than 1½ years in the felony trial division. Defense counsel's testimony is clear and consistent. Defense counsel would have little reason not to call defendant to testify in his own defense if he asked to testify, even if he was jeopardizing his chances for acquittal. On the other hand, defendant's credibility is suspect. Defendant's testimony throughout the hearing was unbelievable and self-serving, corroborated by the fact that defendant had little to lose by not telling the truth. We, therefore, conclude that defense counsel did not prevent defendant from testifying in his own defense at trial.

■ For all the foregoing reasons, we conclude that defense counsel's representation of defendant did not fall below an objective standard of competency so as to deprive defendant of a fair trial. To the contrary, the record demonstrates that defense counsel's representation was anything but incompetent. Defense counsel demonstrated a strong knowledge of the facts of the case and the legal issues involved. Defense counsel's tactics with regard to omitting to call defendant's aunt to testify as an alibi witness or to call defendant to testify in his own defense were strategically sound. Her objections to the prosecutor's examination of the State's prosecution witnesses were timely and correct, and her cross-examination of these witnesses elicited the weaknesses and inconsistencies in the State's case. Accordingly, we hold that defendant was not denied his right to effective assistance of counsel as guaranteed by the sixth amendment to the United States Constitution.

Defendant's second argument on appeal is that he was denied a fair trial when he was not consulted about the nature and circumstances surrounding the substitution of public defenders. We disagree.

■ First, the record does not support defendant's supposition that he was not consulted about the nature and circumstances surrounding Venit's separation from his case. Defendant was present during all court proceedings and was present when the court cursorily explained the necessity of Venit's separation from defendant's case. While the record does not demonstrate that a detailed explanation was made to defendant of the necessity for Venit's separation from the case, it can reasonably be inferred that defendant, an 18-year-old man, was fully aware and apprised of the circumstances involving Venit's separation from the case.

Second, the record is devoid of any evidence that defendant objected to the removal of Venit as his counsel. Defendant failed to men-

tion or imply to either Venit, Lundberg or the trial court that he did not understand why Venit was no longer working on his behalf or that he was dissatisfied that Lundberg was acting as his sole defense counsel. The record reflects that defendant cooperated *in toto* with Lundberg at trial, and it was only after defendant was convicted of the charges that defendant became displeased with her representation. The fact that defendant mentioned for the first time on appeal that he did not understand and was not consulted about Venit's separation from the case can only be interpreted to mean that defendant fully consented to the separation. Accordingly, we conclude that defendant's argument that he was denied a fair trial when he was not consulted about the nature and circumstances surrounding the substitution of public defenders is without merit.

Defendant's final argument on appeal is that his waiver of the right to a jury trial was not knowingly and understandingly made in light of the substitution of attorneys immediately following his jury waiver. This argument is also without merit.

■■ It is undisputed that defendant made a waiver of his right to a jury trial in open court. Defense counsel Venit informed the court that defendant intended to waive his right to a jury trial. The trial court then inquired of defendant whether he clearly understood his right to a jury trial, and the following dialogue took place in open court:

"THE COURT: All right. Mr. Davis, is that correct, as your attorney has indicated that you wish to waive your right to have a jury trial and have this case tried in front of myself as the judge sitting without a jury and I will determine whether you're guilty or not.

DEFENDANT: Yes, sir.

THE COURT: Do you understand what a jury trial is?

DEFENDANT: Yes, sir.

THE COURT: I've been handed this document; is this your signature?

DEFENDANT: Yes, sir.

THE COURT: Do you understand by signing this document and filing this document with the court that you are waiving or giving up your right to have a jury trial on this matter?

DEFENDANT: Yes, sir."

Defendant contends, however, that his waiver of the right to a jury trial was not knowingly and understandingly made because he waived the right to a jury trial while he believed that he would be represented by Venit, and that the decision to waive his right to a jury trial

was based on and intertwined with the confidence and trust that he had in Venit. This argument is logically and legally meritless. Defendant cites various cases in support of his argument; however, none of the cases stands for the proposition of law which defendant seeks for us to adopt. We, therefore, hold that defendant's waiver of his right to a jury trial, given voluntarily in open court, was made knowingly and understandingly.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

TULLY* and CERDA, JJ., concur.

---

*Justice White heard oral arguments in this case prior to his retirement. Justice Tully was designated the third member of the panel and has read the record, brief and listened to the tapes.