THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN SCOTT PENROD, Defendant-Appellant.

Fifth District   No. 5—99—0087

Opinion filed October 6, 2000.—Rehearing denied October 31, 2000.

Daniel M. Kirwan and Lawrence J. O'Neill, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Timothy J. Huyett, Special Prosecutor, of State's Attorneys Appellate Prosecutor's Office, of Springfield and Norbert J. Goetten, Stephen E. Norris, and Sharee S. Langenstein, all of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, for the People.

JUSTICE MAAG delivered the opinion of the court:

John Scott Penrod (defendant) was convicted by a jury of residential burglary, a Class 1 felony, and theft under $300, a Class 4 felony by reason of his prior burglary conviction. Defendant was sentenced to concurrent prison terms of 12 years on the residential burglary conviction and three years on the theft conviction. On appeal, defendant contends that he was denied his right to a speedy trial, that he was denied the effective assistance of counsel, and that the State failed to prove guilt beyond a reasonable doubt.

A detailed procedural history of this case follows. Those facts pertinent to a resolution of the remaining issues will be provided during a discussion of those points. On December 17, 1996, defendant was initially arrested and taken into custody on a warrant unrelated to this case. Later that day, defendant was charged with a residential burglary that occurred on December 17, 1996, and another burglary that occurred on December 7, 1996. At the time of his arrest, defendant was serving a period of mandatory supervised release under the supervision of the Illinois Department of Corrections for a prior felony offense.

On December 19, 1996, defendant appeared in court and was advised of the charges against him. During this appearance, the court appointed James Henson, an attorney from the public defender's office, to represent defendant. The court also set a bond and scheduled an arraignment and a preliminary hearing for January 8, 1997. On December 23, 1996, the grand jury indicted defendant on the residential burglary offense, thus obviating the need for a preliminary hearing. Following defendant's arraignment on January 8, 1997, the court set a final pretrial conference for February 26, 1997, and a jury trial for March 11, 1997.

On February 20, 1997, the Illinois Department of Corrections issued a parole-violation warrant based primarily on the new burglary charges, and defendant was returned to one of its corrections facilities.

On February 25, 1997, the State filed a motion to continue the

jury trial because it had not received the results of forensic tests from the Illinois State Police crime lab. On February 26, 1997, the court granted the State's motion and reset the case for trial on March 25, 1997. On March 11, 1997, the State filed an answer to discovery, listing additional State's witnesses. On March 17, 1997, the State filed an additional count charging defendant with theft with a prior burglary conviction.

On March 25, 1997, attorney Henson informed the court that he was representing one of the witnesses whom the State identified in its March 11, 1997, disclosure and therefore had a conflict of interest. The court permitted Mr. Henson to withdraw and appointed another public defender, Jerry Crisel, to represent defendant. The court continued the trial to April 22, 1997, and set a pretrial conference for March 27, 1997, two days later. On the State's motion, the court released defendant from bond on the pending burglary and theft charges. Defendant remained in the custody of the Illinois Department of Corrections pending a hearing on the alleged violations of his mandatory supervised release.

On April 17, 1997, defendant filed a motion to dismiss the residential burglary and burglary charges, claiming that his right to a speedy trial had been violated because he had been in custody for more than 120 days and had not been brought to trial within that time. After a hearing on April 21, 1997, the court denied the motion to dismiss. Following the residential burglary and theft convictions, the State dismissed the remaining burglary charge.

In his first point, defendant argues that the trial court erred in failing to dismiss the charges because the State failed to try him within the time limits prescribed in section 103—5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5(a) (West 1992)). The State argues that because defendant was in the custody of the Department of Corrections after March 11, 1997, the date the court released defendant from his bond, he was required to make a written demand for a speedy trial pursuant to the intrastate detainers statute (730 ILCS 5/3—8—10 (West 1992)) but that he failed to do so.

We note that the prosecution and the defense agree that defendant was taken into custody on December 17, 1996. Defendant concedes that he never made a demand for a speedy trial. Instead, he contends that section 103—5(a) of the Code of Criminal Procedure of 1963 applies to his case and that, according to this provision, the State was obligated to try the case within the time specified, without a demand by defendant. Section 103—5 of the Code of Criminal Procedure of 1963 is commonly referred to as the speedy trial act. We must decide whether section 103—5(a) of the speedy trial act or the provisions of

the intrastate detainers statute apply. Before answering the specific question, it is important to review the differences between the two statutes.

Although the subject matter of the intrastate detainers statute is the same as that of the speedy trial act, namely, a defendant's right to a speedy trial, the application of each statute depends upon the classification of the defendant. The intrastate detainers statute and the speedy trial act establish different time periods and demand requirements for differently situated defendants. *People v. Staten*, 159 Ill. 2d 419, 424, 639 N.E.2d 550, 553 (1994).

■ Section 103—5(a) of the speedy trial act provides, "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103—5(a) (West 1992). This provision requires the State to bring the defendant to trial on the alleged offenses within the time specified, without any demand from the defendant. *Staten*, 159 Ill. 2d at 424, 639 N.E.2d at 553. The legislature imposed this burden on the State because defendants who remain in custody before their trial, unlike those released on bail, suffer the loss of their liberty before they are adjudicated guilty of a crime. *Staten*, 159 Ill. 2d at 424, 639 N.E.2d at 553-54.

In contrast, subsection (b) of the speedy trial act requires a defendant who is on bail or released on his own recognizance to serve the State with a formal written demand for a speedy trial, before the clock begins to tick. 725 ILCS 5/103—5(b) (West 1992). Thus, the legislature protected a nondetained defendant's right to a speedy trial but shifted the burden and required the defendant to make the demand. *Staten*, 159 Ill. 2d at 424, 639 N.E.2d at 554.

■ The intrastate detainers statute (730 ILCS 5/3—8—10 (West 1992)) was enacted subsequent to the speedy trial act. The legislature specifically incorporated certain provisions of the speedy trial act into the intrastate detainers statute. 730 ILCS 5/3—8—10 (West 1992). The intrastate detainers statute provides that subsections (b), (c), and (e) of the speedy trial act also apply to persons who are committed to an institution or facility or program of the Illinois Department of Corrections and who have untried complaints, charges, or indictments pending in any county of this state. 730 ILCS 5/3—8—10 (West 1992); 725 ILCS 5/103—5(b), (c), (e) (West 1992). The intrastate detainers statute requires this class of defendants to comply with specific provisions of the statute, which include serving a written demand for a speedy trial to start the clock ticking. 730 ILCS 5/3—8—10 (West 1992).

In enacting this provision, the legislature acknowledged that a person committed to an institution, facility, or program of the Department of Corrections retained a right to a speedy trial on untried charges, but it recognized that the person's loss of liberty was not based solely upon untried charges but, rather, was based upon a prior conviction. *Staten*, 159 Ill. 2d at 428, 639 N.E.2d at 555. Thus, the legislature imposed the burden on defendants committed to the custody of the Department of Corrections to make a written demand for a speedy trial. 730 ILCS 5/3—8—10 (West 1992); *Staten*, 159 Ill. 2d at 428, 639 N.E.2d at 555.

■ Though both the speedy trial act and the intrastate detainers statute deal with the accused's right to a speedy trial, the intrastate detainers statute is a particular enactment that only applies to persons committed to the custody of the Department of Corrections. Under principles of statutory construction, statutes relating to the same subject matter must be construed together so that effect may be given to all the provisions of each statute if it can be done by a fair and reasonable construction. *People v. Gardner*, 15 Ill. App. 3d 255, 257, 304 N.E.2d 125, 127 (1973). It is presumed that all statutes relating to one subject are governed by one policy and that the legislature intended them to be operative and harmonious. *People v. Gardner*, 15 Ill. App. 2d at 257-58, 304 N.E.2d at 127. Where there is one statute or a provision thereof dealing with a subject in general and comprehensive terms and another statute or provision dealing with a part of that same subject in a more minute and particular way, the particular enactment is held to qualify and to be operative as against the general provisions. *Ashton v. County of Cook*, 384 Ill. 287, 298, 51 N.E.2d 161, 166 (1943); *People v. Hale*, 55 Ill. App. 2d 260, 263, 204 N.E.2d 833, 835 (1965). According to these principles, the intrastate detainers statute is a particular enactment that does not conflict with but, rather, qualifies the speedy trial act.

■ We now turn to defendant's argument that section 103—5(a) of the speedy trial act applies to this case. Defendant's argument is premised upon his contention that he was not in the custody of the Department of Corrections on the parole violation but, rather, was in the continuous custody of the State for the pending burglary offenses from the date he was arrested. We disagree with defendant's initial premise.

The record indicates that defendant was serving a period of mandatory supervised release at the time of his arrest on the burglary charges. Section 3—14—2(a) of the Unified Code of Corrections provides that the Department of Corrections "shall retain custody of all persons placed on parole or mandatory supervised release *** and

shall supervise such persons during their parole or release period in accord with the conditions set by the Prisoner Review Board." 730 ILCS 5/3—14—2(a) (West 1992). According to this provision, defendant remained in the custody of the Department of Corrections during the mandatory supervised release program. Defendant had not been "discharged" from the Department of Corrections. The Unified Code of Corrections defines "discharge" as "the final termination of a commitment to the Department of Corrections." 730 ILCS 5/3—1—2(g) (West 1992). A mandatory supervised release is not a "discharge." See 730 ILCS 5/3—1—2 (West 1992); 730 ILCS Ann. 5/3—1—2, Council Commentary, at 11 (Smith-Hurd 1997).

Therefore, defendant was committed to the continuous custody and under the supervision of the Illinois Department of Corrections during the entire period of his mandatory supervised release program and subsequent thereto when he was recommitted to one of its facilities pending a parole-revocation hearing. See 730 ILCS 5/3—1—2, 3—14—2 (West 1992). Because defendant was committed to a program and subsequently to an institution of the Illinois Department of Corrections, he was required to make a demand for a speedy jury trial pursuant to and in compliance with provisions of the intrastate detainers statute (730 ILCS 5/3—8—10 (West 1992)). Because defendant never made a demand for a speedy trial in this case, the applicable time period never began to run. Accordingly, there is no speedy-trial violation.

■ In his second point, defendant claims that the State failed to prove his guilt beyond a reasonable doubt. Defendant argues that the evidence in this case consisted primarily of an accomplice's testimony, that the accomplice testified with an expectation of leniency, and that his testimony was improbable, unsupported by corroborating evidence, and inherently suspicious.

A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt about the defendant's guilt. *People v. McLaurin*, 184 Ill. 2d 58, 79, 703 N.E.2d 11, 21 (1998). Determinations of the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. *McLaurin*, 184 Ill. 2d at 79, 703 N.E.2d at 21. As a court of review, we do not reweigh the evidence or substitute our judgment for that of the trier of fact. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). The relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261, 478

N.E.2d at 277, citing *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

Because the testimony of an accomplice has inherent weaknesses, it should be viewed with suspicion and subject to careful scrutiny. *People v. Williams*, 147 Ill. 2d 173, 233, 588 N.E.2d 983, 1006 (1991). Nevertheless, the Illinois Supreme Court has repeatedly said that such testimony, whether corroborated or uncorroborated, is sufficient to sustain a criminal conviction if it convinces the jury of the defendant's guilt beyond a reasonable doubt. *McLaurin*, 184 Ill. 2d at 79, 703 N.E.2d at 21; *Williams*, 147 Ill. 2d at 233, 588 N.E.2d at 1006; *People v. Farnsley*, 53 Ill. 2d 537, 544-54, 293 N.E.2d 600 (1973); *People v. Wollenberg*, 37 Ill. 2d 480, 484-85, 229 N.E.2d 490 (1967).

This standard of review applies whether the evidence is direct or circumstantial. *People v. Watt*, 244 Ill. App. 3d 103, 119, 613 N.E.2d 1160, 1170 (1993). This was a circumstantial evidence case. Circumstantial evidence is the proof of facts or circumstances that give rise to a reasonable inference of other facts that tend to establish the guilt or innocence of a defendant. *Watt*, 244 Ill. App. 3d at 119, 613 N.E.2d at 1170. It is not necessary that the jury be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all the evidence taken together satisfies the jury beyond a reasonable doubt of the accused's guilt. *People v. Jones*, 105 Ill. 2d 342, 350, 475 N.E.2d 832, 835 (1985).

The following facts are not in dispute. On December 17, 1996, detectives from the sheriff's department went to a home, known as a crack house, to arrest defendant on an outstanding warrant, unrelated to the residential burglary. The officers arrived about 2:15 p.m., found defendant hiding in a shower, and placed him under arrest. At the time of defendant's arrest, these officers had no knowledge of the residential burglary. The burglary was not reported until about 2:30 p.m. that day. After defendant was placed under arrest, the officers found costume jewelry in his pocket. The officers also noted a red can containing other pieces of jewelry in a room near the shower, but they did not seize it at that time. After the officers learned about the residential burglary, they returned to the crack house with a warrant and seized the jewelry and a bag containing two weapons and a holster. All of these items were later identified as property taken from the victim's home during the burglary.

During the trial, the State called a number of witnesses who stayed at the crack house. One of those witnesses, Charles Tate, was an alleged "accomplice." A summary of pertinent portions of Mr. Tate's testimony follows. Mr. Tate told the jury that he "hooked up" with defendant about 7 a.m. on the morning of December 17, 1996. Tate

admitted that he started drinking early on the morning of December 17, 1996, and that he had been "partying" and using crack cocaine the night before. According to Tate, defendant asked him for a ride out to the country that morning, but he initially declined because he did not have enough gas. After defendant came up with $2 or $3 for gas, Tate agreed to drive defendant to a residence south of Mt. Vernon. When they arrived, defendant went to the front door and knocked. No one answered. Defendant then went to some French doors and slid open a screen. He told Tate that they were at home. Defendant instructed Tate to go down the road and then come back and pick him up. Tate complied.

When Tate returned, defendant was in the driveway. Tate noticed that defendant's coat was bulkier, as though he had something under it, that defendant was clenching his midsection, and that defendant was sweating even though it was a cold day. During the ride back, defendant asked Tate to stop at another house. Prior to arriving there, defendant put a .25-caliber automatic pistol in Tate's right-hand coat pocket. Tate testified that it was then he realized that defendant "had robbed this house." Tate stated that he never got out of his car and never went into the house. Tate admitted to the jury that he was testifying with the expectation that he was going to get a reduced charge and no jail time. The pistol that defendant gave Tate was identified as one taken from the victim's home during the burglary.

Against his own counsel's advice, defendant testified. During his testimony, defendant admitted that he had three prior felony convictions. He denied any involvement or participation in the residential burglary. Defendant testified that he was placed under arrest on December 17, 1996, on an outstanding warrant. When the police arrested him, they found some costume jewelry in his pockets. Defendant testified that he told the police he had purchased the jewelry from Charles Tate. He testified that Tate came to the crack house with some jewelry and weapons about 11 a.m. that morning and asked defendant where he could sell them.

In this case, the resolution of defendant's guilt or innocence turned on the credibility of the State's witnesses, defendant's credibility, and the weight to be given that testimony. It was the jury's charge to determine issues of credibility, to weigh the testimony, and to resolve any conflicts in the evidence. *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.

During direct examination, Mr. Tate admitted his abuse of drugs and alcohol. Mr. Tate told the jury that he was testifying with the expectation of leniency. Tate testified that, after he gave his statement, the police indicated they would try to get "a lesser charge" for

him. The court instructed the jury that the testimony of an accomplice is subject to suspicion and should be considered with caution.

The testimony of defendant conflicted with the testimony of the accomplice. The jury had the opportunity to view each witness and to assess the demeanor and credibility of each witness. The jury was fully apprised of the infirmities in Mr. Tate's testimony. The jury chose to believe the accomplice. After reviewing the record, we cannot say that the jury's conclusion was unreasonable or that the evidence was so improbable that it created a reasonable doubt about defendant's guilt. After viewing the evidence in a light most favorable to the prosecution, we conclude that there is sufficient evidence to support the jury's verdict.

■ In his final point, defendant claims that his constitutional right to the effective assistance of counsel was violated because his attorney committed a number of unprofessional errors.

Claims of ineffective assistance of counsel are evaluated under a two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To succeed on a claim of ineffective assistance of counsel a defendant must show: (1) that counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness under prevailing professional norms and (2) that the substandard representation so prejudiced defendant that there is a reasonable probability that, absent the errors, the outcome would have been different. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255 (1984). The benchmark must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.

In evaluating counsel's performance, a defendant must overcome a strong presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Any evaluation of counsel's conduct cannot properly extend into matters involving the exercise of judgment, trial tactics, or strategy. *People v. Mitchell*, 105 Ill. 2d 1, 473 N.E.2d 1270 (1984). On review, the determination of the reasonableness of trial counsel's actions must be evaluated from trial counsel's perspective at the time of the alleged error, without hindsight, in light of the totality of the circumstances. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

The court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as

a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1256.

Defendant first claims that his counsel was ineffective because he did not communicate with defendant while preparing for the trial. During the ineffective-assistance hearing, defendant's trial counsel admitted that he neither called nor traveled to the state prison to meet with defendant while defendant was incarcerated there. Counsel testified that he spoke with defendant on a couple of occasions before the trial and that it was his recollection that the meetings were longer than five minutes. The record supports counsel's recollection. According to the March 25, 1997, report of proceedings, after permitting defendant's first attorney to withdraw, the court set a pretrial conference for the express purpose of providing defendant an opportunity to meet with his new counsel. The March 27, 1997, report of proceedings indicates that defendant and his counsel were given that opportunity following a brief pretrial conference.

In addition, defendant has not shown how further pretrial communication would have altered the outcome of this case. See *People v. Davis*, 228 Ill. App. 3d 123, 128-29, 592 N.E.2d 464, 468 (1992). In our view, defendant's counsel appeared to have an understanding of the factual and legal issues in the case. Counsel filed a motion to dismiss based upon an alleged speedy-trial violation and argued other pretrial motions on defendant's behalf. During the cross-examination of the State's witnesses, counsel demonstrated that he was familiar with the facts of the case and facts reflecting on the credibility of those witnesses. Defendant has not shown that he was denied a fair trial nor that, absent the alleged ineffective assistance, the result of the proceeding would have been different. See *Davis*, 228 Ill. App. 3d at 129, 592 N.E.2d at 468.

Defendant next claims that his counsel was ineffective because he failed to interview and subpoena an alibi witness, Jerry Hill. We first note that defendant has presented no evidence of what Mr. Hill would have testified to had he been called. Mr. Hill was not called and did not appear as a witness during the ineffective-assistance hearing. Defendant did not submit an affidavit from Mr. Hill setting forth what information Mr. Hill could provide. Without testimony or an affidavit, this court cannot determine whether the proposed witness could have provided any information or testimony favorable to defendant. See *People v. Johnson*, 183 Ill. 2d 176, 192, 700 N.E.2d 996, 1004 (1998); *People v. Guest*, 166 Ill. 2d 381, 402, 655 N.E.2d 873, 883 (1995).

Further, the decision of whether to call a witness is a tactical and strategic decision, and defense counsel is given wide latitude in making those decisions. *People v. Flores*, 128 Ill. 2d 66, 85-86, 538 N.E.2d 481, 485-86 (1989); *Davis*, 228 Ill. App. 3d at 130, 592 N.E.2d at 469. During the ineffective-assistance hearing, counsel testified that he was aware of the general nature of Mr. Hill's purported testimony, based upon discussions with defendant. Counsel testified that he did not subpoena Mr. Hill to testify because Hill was known as a crack dealer and, as such, would not likely be viewed as a very credible character. Counsel stated that in his judgment any association between his client and Mr. Hill would do the defense more harm than good.

Defendant failed to rebut the strong presumption that counsel's decision not to interview or subpoena Mr. Hill constituted reasonable trial strategy. See *Flores*, 128 Ill. 2d at 85-86, 538 N.E.2d at 485-86. In addition, defendant failed to demonstrate that Mr. Hill would have testified favorably to the defense and that his testimony would have made a difference in the outcome. See *People v. Ashford*, 121 Ill. 2d 55, 77, 520 N.E.2d 332, 341 (1988).

Defendant also claims that counsel was ineffective in failing to present an opening statement. A defense attorney's decision to make or waive an opening statement on behalf of a defendant is a question of judgment in strategy or tactics that will not in and of itself demonstrate the ineffective assistance of counsel. *Davis*, 228 Ill. App. 3d at 127, 592 N.E.2d at 467; *People v. Georgev*, 38 Ill. 2d 165, 169, 230 N.E.2d 851, 854 (1967). "Only the most egregious of tactical or strategic blunders may provide a basis for a violation of a defendant's right to effective assistance of counsel." *Davis*, 228 Ill. App. 3d at 127, 592 N.E.2d at 467; *People v. Lee*, 185 Ill. App. 3d 420, 445, 541 N.E.2d 747, 761-62 (1989).

Although an opening statement is ordinarily important in order to provide the jury with a clear understanding of the theory of the case or to explain complex issues (*Davis*, 228 Ill. App. 3d at 127, 592 N.E.2d at 467), there are strategic reasons for waiving the opening statement (*People v. Flores*, 231 Ill. App. 3d 813, 826, 596 N.E.2d 1204, 1212 (1992)).

During the ineffective-assistance hearing, counsel testified that his decisions to reserve the opening statement until the close of the State's case and then to waive opening statement were matters of trial strategy. He explained that sometimes there are uncertainties as to how the evidence will develop. In this case, he recognized that several State witnesses were unsavory crack addicts who could not be relied upon to appear for the trial or to testify consistently with statements previously given. Counsel stated that in his judgment it would be

proper for the defense to "wait and see" how the evidence developed. Counsel also stated that he had some concerns about consistency in his own client's testimony and that he wanted to avoid any potential for conflict between his client's testimony and his opening statement. Counsel expressed concern that the jury would note any variance between his opening statement and defendant's testimony and hold it against defendant.

Considering the nature of this case and the unpredictable character of the witnesses, counsel decided that it was unwise to present an opening statement that might box him into one particular theory. See *Flores*, 231 Ill. App. 3d at 826, 596 N.E.2d at 1212. In our view, this was an acceptable trial strategy under the circumstances of this case. Accordingly, we conclude that counsel's decision not to make an opening statement did not violate defendant's right to the effective assistance of counsel.

Finally, defendant claims that counsel was ineffective in agreeing to a stipulation regarding forensic testing. Two screwdrivers, which were seized by the police from the room adjacent to where defendant was arrested, were sent for testing. The stipulation stated that the screwdrivers were examined by a forensic scientist employed by the Illinois State Police who specializes in the comparison of tool marks. The stipulation also stated that, if the expert was called, he would testify that "the screwdrivers could not be excluded as a possible source" for damage marks found at the point of entry but that they were not a "match." The stipulation also provided that there were no latent prints suitable for comparison on a bag which was recovered at the crack house and which contained items taken from the victim's home.

Counsel may have considered such a stipulation preferable to the possibility of having lengthy and detailed testimony from the State's expert, which may have highlighted this evidence and made it appear more important than it was. See *People v. Puente*, 125 Ill. App. 3d 152, 159, 465 N.E.2d 682, 687 (1984).

Further, the fact that the screwdrivers may have been used in the burglary is not particularly damaging to the defense, given defendant's theory that he did not commit the burglary and that he was found in possession of stolen jewelry because he had purchased those items from Tate earlier that day. We note that the police found not only the screwdrivers but also other proceeds of the burglary in the room adjacent to the area where they arrested defendant, that this room was accessible to a number of people, including Tate, and that there were no usable prints on any of the items recovered. Defendant has not shown that this stipulation harmed his theory of the case. See *Guest*, 166 Ill. 2d at 403, 655 N.E.2d at 884.

In our view, counsel's decision to stipulate to this evidence was a matter of trial strategy. Further, defendant has not demonstrated that the outcome of the proceeding would have been different had his attorney rejected the stipulation.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

CHAPMAN and WELCH, JJ., concur.