NOTICE

Decision filed 04/07/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0514

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
                                                       ) Circuit Court of
        Plaintiff-Appellee, ) Fayette County.
                                                         )
v. ) No. 06-CF-20
                                                         )
ROBERT C. TAYLOR, ) Honorable
                                                         ) S. Gene Schwarm,
        Defendant-Appellant. ) Judge, presiding.
_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a jury trial in the circuit court of Fayette County, defendant, Robert C. Taylor, was found guilty of domestic battery in violation of section 12-3.2(a)(1) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12-3.2(a)(1) (West 2004)). He was sentenced to 60 days in the county jail, with credit for 5 days served, fined a total of $500 plus court costs, ordered to obtain an alcohol substance-abuse evaluation and comply with any recommended terms, and ordered to pay a $10-per-month probation fee. On appeal, defendant raises the following issues: (1) whether the State proved defendant guilty of domestic battery beyond a reasonable doubt and (2) whether defendant is entitled to a credit of $5 per day toward the fine he was assessed for time he spent in custody prior to sentencing. We affirm in part and remand.

BACKGROUND

On December 16, 2005, Officer Todd Emerick of the Vandalia police department responded to a 9-1-1 call at defendant's house. Defendant told Officer Emerick that Lisha Clary broke into his house and attacked him. After interviewing the parties and witnesses,

1

Emerick arrested defendant. Defendant was later charged by information with domestic battery "in that said defendant, without legal justification, knowingly caused bodily harm to Lisha Clary, a family or household member of the defendant, in that said defendant struck Lisha Clary in the mouth with said defendant's hands" in violation of section 12-3.2(a)(1) of the Criminal Code. Defendant was also charged with battery for striking Lisha Clary's daughter, K.F., in the mouth.

On August 17, 2006, both counts proceeded to a jury trial. K.F., age 15, testified that she and defendant's daughter, A.M., are friends. K.F. spent the night with A.M. at defendant's house on the night of December 16, 2005. They were asleep in A.M.'s bedroom when they were awakened by a loud noise in defendant's bedroom. They went to see what caused the noise and found K.F.'s mother standing inside the room and defendant and Betty Kophazy sitting on the bed.

After seeing another woman on defendant's bed, K.F. ran out of the house, using the back door. The door was intact when she ran out. She reentered and found defendant throwing tables at her mother and saw defendant hit her mother in the face. K.F. then got between defendant and her mother and hit defendant. Defendant hit K.F. back, cutting her face.

K.F. testified that at the time of the incident, she and her mother had been staying at defendant's house for a couple of weeks and that her mom and defendant had been "going out." During the weeks they were living at defendant's house, K.F. witnessed defendant and her mother hugging and kissing. Both K.F. and A.M. encouraged the relationship between their parents. K.F. testified that her mother slept in defendant's bedroom during the time they stayed at defendant's house. K.F. kept her clothes in a bag in A.M.'s room. She was "pretty sure" that her mom kept her clothes and a bag of pills in defendant's bedroom. After defendant hit her, K.F. again fled the house via the back door. She broke the window out of

2

the door attempting to get out of the house and cut her arm on some glass.

Lisha Clary, age 42, testified that she had been staying at defendant's house for approximately three weeks prior to the night in question. She said that she and defendant "were dating" and that she slept in his bedroom. She stated that some of her clothes were in a bag and that some of her clothes were in a closet alongside defendant's bed. She testified that she kept her medication at defendant's house. She had been at defendant's house earlier in the day, left, and returned around midnight. She initially testified that she did not have a key to defendant's house. The door was unlocked. She later recalled that defendant left a key for her to use. She entered the house, walked through the kitchen and living room, and went to defendant's bedroom. She found defendant lying on his bed with his head in the lap of another woman, Betty Kophazy. Betty was sitting on the bed and was wearing clothes, but defendant was naked.

Clary asked defendant if she could get her bag of clothes and medication, but defendant refused. Defendant got off the bed, came at her, and started striking her with his fists. She ran out of the bedroom and into the living room. Defendant picked up the coffee table and hit her in the back with it, causing her to fall to the floor. She got up and went into the kitchen, where defendant continued to hit her. K.F. intervened and hit defendant. Defendant then hit K.F. twice. K.F. got scared and tried to run out the back door. K.F. could not get the door open and her arm went through the storm window.

Defendant called the police from a telephone in his room. The police arrived on the scene. The police first talked to Clary and K.F. The police then went into the bedroom and talked to defendant. Defendant was handcuffed and taken out the back door. Clary denied hitting defendant in the bedroom.

On cross-examination, Clary admitted that she had been convicted of aggravated battery on July 26, 2006, on an unrelated matter in Fayette County and had served a sentence

3

of 30 days in the county jail. The State stipulated that Clary also had been convicted of theft in a previous matter. Clary gave a written statement to police on the night in question. At that time she listed her address as 621 North Fifth in Vandalia, which is not defendant's address.

On rebuttal, Clary said that she and defendant had engaged in sex. She recalled that they had engaged in sex a "couple days before" the night in question.

Todd Emerick, a police officer who responded to the domestic disturbance call at defendant's house, testified that upon his arrival, he and his partner knocked on the door, but no one answered. They walked around the house and found broken glass outside the kitchen door. They heard yelling inside the house and could not get anyone's attention. Ultimately, they identified themselves as police officers and walked inside. They observed K.F. in the kitchen. Emerick described her as "very upset, crying," and "hysterical." After interviewing the parties and the witnesses, they arrested defendant and transported him to jail.

While defendant reported that Lisha Clary broke into his house, Emerick noted that he and his partner found broken glass outside the kitchen door, which indicated that something or someone broke the glass from the inside, pushing out. Emerick further noted that there was broken glass in the living room and that a coffee table appeared to have been thrown. Emerick originally charged defendant with battery and listed the victim as K.F.

A.M., age 15, testified for the defense. Defendant is her father and she resides with him at his rental house, where the incident occurred. She said that at the time of the offense, no one else lived with them. She has been friends with K.F. since fifth grade. K.F. frequently spent the night at her house, and sometimes Lisha Clary would also spend the night on the weekends, with Clary sleeping on the couch. A.M. admitted that Clary left some clothes at the house, but she said that they always stayed in a green cloth bag in the living room. She said that prior to the day in question, she never saw defendant kiss or hug Lisha

4

Clary. According to A.M., defendant and Clary were just friends.

On December 16, 2005, A.M. and K.F. heard a thud, so they went into defendant's bedroom to investigate. They saw defendant and Betty sitting on the bed. Clary was standing across the room and was "yelling." A.M. went back to her bedroom and K.F. went outside. A.M. saw Clary pick up a lamp but did not see what she did with it because A.M. went back into her room. A.M. did hear glass breaking. At some point, Betty came into her room and told her she could calm down because the police had arrived. The police tried to interview A.M., but she told them she did not see much because she was in her room. She did not tell the police that she saw Clary pick up a lamp.

Betty Kophazy testified that she now lives with defendant and A.M. at the house in which the incident occurred and that she is defendant's girlfriend. She moved in at the end of February or early March 2006. On the night in question, she was fully clothed and sitting on defendant's bed when she heard the sound of glass crashing. She told defendant, "Somebody's just broke your window out." After a little more ruckus, she heard someone banging on the bedroom door, which was shut. Clary then came into the room and asked defendant where her pills were. Defendant told Clary he did not know. Clary then started hitting defendant and cussing at him. According to Kophazy, defendant covered himself and did not strike back. Clary then went after Kophazy. Kophazy tried to jump over the top of defendant, at which time she kicked Clary in the chest, and Clary fell to the floor. Clary went into the living room and started breaking things, while defendant called the police from a phone in his bedroom.

Kophazy went into the living room and found broken glass all over. Clary was in the kitchen and K.F. was on the back porch. K.F. was pale and said she had cut her arm on the door. Kophazy told K.F. to sit before she fainted. Clary told Kophazy to get away from her daughter, so Kophazy went back to defendant's bedroom until the police arrived. Kophazy

5

testified that defendant never hit Clary. Defendant just wanted Clary out of his house, but the police ended up arresting defendant. Kophazy had seen Clary earlier in the evening at a bar and believed that Clary was drunk when she arrived at defendant's house.

On the night in question, Kophazy told the police she did not see anything. Kophazy admitted that when defendant was arrested, she did not tell the police that they were making a mistake. She said that her main concern was A.M. and that she had tried to calm her and tell her that it would be okay because her father did not do anything wrong. Kophazy has a felony conviction for possession of cannabis.

During deliberations, the jurors sent a question to the judge that asked whether they should convict defendant of battery if they believed that defendant had hit K.F. accidentally when she was intervening between Clary and defendant. The judge responded: "Your question is contained in the instructions. Please refer to your instructions." The jury found defendant guilty of domestic battery regarding Clary but not guilty of battery regarding K.F. Defendant was sentenced to 60 days in the county jail and fined $500. Defendant now appeals.

## ANALYSIS

The first issue we are asked to address is whether defendant was proven guilty of domestic battery. Defendant argues he was not proven guilty beyond a reasonable doubt because the State failed to prove that Lisha Clary was a household member or involved in a dating relationship with defendant. He asks that his conviction be reduced to simple battery. The State replies that it presented sufficient evidence to prove that defendant and Clary were in a dating relationship and shared a common dwelling and that, thus, he was proven guilty beyond a reasonable doubt of domestic battery. We agree that the State presented sufficient evidence to show that Clary and defendant were in a dating relationship.

Section 12-3.2 of the Criminal Code provides in pertinent part as follows:

6

"(a) A person commits domestic battery if he intentionally or knowingly without legal justification by any means:

(1) Causes bodily harm to *any family or household member* as defined in subsection (3) of Section 112A-3 of the Code of Criminal Procedure of 1963, as amended[.]" (Emphasis added.) 720 ILCS 5/12-3.2(a)(1) (West 2004).

Subsection 3 of section 112A-3 of the Code of Criminal Procedure of 1963, which is referenced in section 12-3.2 of the Criminal Code, defines "Family or household members" and provides that these terms include not only "spouses, former spouses, parents, children, stepchildren[,] and other persons related by blood or by present or prior marriage" but also "persons who share or formerly shared a common dwelling" and "persons who have or have had a dating or engagement relationship." 725 ILCS 5/112A-3(3) (West 2004). Subsection 3 of section 112A-3 further provides that "neither a casual acquaintanceship nor ordinary fraternization between 2 individuals in business or social contexts shall be deemed to constitute a dating relationship." 725 ILCS 5/112A-3(3) (West 2004).

When a defendant challenges the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004). Rather, a reviewing court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ward*, 215 Ill. 2d 317, 322, 830 N.E.2d 556, 559 (2005). Here, defendant was convicted following a jury trial; therefore, it was the province of the jury to determine the credibility of witnesses, evaluate the evidence, and resolve any inconsistencies therein. *People v. Penrod*, 316 Ill. App. 3d 713, 721, 737 N.E.2d 341, 350 (2000). A conviction should not be reversed "unless the evidence is so unreasonable, improbable[,] or unsatisfactory that it raises a reasonable

7

doubt of defendant's guilt." *Evans*, 209 Ill. 2d at 209, 808 N.E.2d at 947.

In the instant case, we agree with the State that the evidence, when viewed in the light most favorable to the prosecution, shows that defendant and the victim, Lisha Clary, were involved in a "dating relationship." Clary specifically testified that she and defendant "were dating." She described her relationship with defendant as more than platonic and revealed that she and defendant had engaged in sex as recently as two days prior to the date in question. Both she and her daughter testified that they had been living at defendant's house for approximately three weeks prior to the incident in question. Clary kept both clothes and medications at the defendant's house. She testified that she slept in defendant's bed. Clary's daughter testified that she believed that her mother and defendant were "going out," because she saw them hugging and kissing during the weeks they lived at defendant's house. Clary's and K.F.'s testimony showed that the parties' relationship was neither a casual acquaintance nor ordinary fraternization, but a romantic relationship between two adults who were living in the same household.

Defendant relies on *People v. Young*, 362 Ill. App. 3d 843, 840 N.E.2d 825 (2005), in support of his contention that the evidence failed to show he and Clary were "family or household members" as required for a domestic battery conviction. However, *Young* is distinguishable from the instant case. First, the *Young* court found that the complainant and the defendant did not have a fixed residence and resided in homeless shelters and that there was no evidence that they had formed a household. *Young*, 362 Ill. App. 3d at 850, 840 N.E.2d at 830. The *Young* court specifically stated that "for two people to 'share a common dwelling' is for them to stay in one place together on an extended, indefinite, or regular basis." *Young*, 362 Ill. App. 3d at 849, 840 N.E.2d at 830. Here, Clary and defendant stayed together at defendant's rental property, not a homeless shelter. According to Clary's testimony and her daughter's testimony, Clary lived with defendant for three weeks prior to

8

December 16, 2005.

Second, in *Young*, the complaining witness actually denied the existence of a dating relationship with the defendant, claiming instead that the two had only a social relationship. *Young*, 362 Ill. App. 3d at 845, 840 N.E.2d at 827. The court found that because the complaining witness chose the word "social" to describe the parties' relationship, there was direct evidence that she did not think the focus of the relationship was romantic. *Young*, 362 Ill. App. 3d at 852, 840 N.E.2d at 832. Here, on the other hand, the complaining witness believed her relationship with defendant was romantic. She had lived with defendant for three weeks prior to the date in question. During that time, she slept in defendant's bed and engaged in sex with defendant. Her daughter confirmed that the nature of the relationship was romantic. According to K.F. both she and defendant's daughter encouraged the romantic relationship between their parents. K.F. said she saw defendant and her mother hugging and kissing during the weeks she and her mother lived at defendant's house.

The *Young* court noted particular changes to the statute in question that indicate the General Assembly's intention to address particular problems of abuse within intimate relationships:

"Until 1993, the section encompassed only people who would fall within the ordinary understanding of former and current family and household members: ' "Family or household members" includes spouses, former spouses, parents, children, stepchildren[,] and other persons related by blood or marriage, persons who share or formerly shared a common dwelling, and persons who have or allegedly have a child in common.' 725 ILCS 5/112A-3(3) (West 1992). Effective 1993, the General Assembly added to the definition 'persons who have or have had a dating or engagement relationship, [and] persons with disabilities and their personal assistants.' Pub. Act 87-1186, eff. January 1, 1993. These are two groups that one might not

9

naturally include in a class with family or household members, but for which the problems of abuse are similar to those in more strictly domestic relationships. By broadening the definition this way, the General Assembly made it reach most intimate relationships." *Young*, 362 Ill. App. 3d at 850-51, 840 N.E.2d at 831. While the relationship in *Young* was not the type of intimate relationship our General Assembly envisioned, the relationship here is.

We agree with the *Young* court to the extent that just because persons share lodgings does not necessarily mean that they share a common dwelling. *Young*, 362 Ill. App. 3d at 849, 840 N.E.2d at 830. However, we need not reach the issue of whether Clary and defendant shared a common dwelling, because they clearly shared a *dating* relationship. Not only did they live in the same house, but also they shared the same bed for three weeks prior to the incident. Their relationship was a kind in which problems of abuse might arise. Overall, we find the evidence sufficient to support a finding that defendant and Clary were family or household members within the meaning of the statute, so we will not reduce defendant's conviction to the lesser-included offense of battery.

The second issue we are asked to address is whether defendant is entitled to a credit of $5 per day toward the fine he was assessed for time spent in custody prior to sentencing. Defendant argues he served five days in custody prior to sentencing and that, thus, he is entitled to a credit of $25 toward his $500 fine. The State concedes that defendant is entitled to a credit of $5 per day for the time he spent in pretrial custody, but it asserts that defendant was in jail only for two days prior to posting bail and, accordingly, is entitled to a credit of only $10. We give defendant the benefit of the doubt that he is entitled to a $25 credit toward his fine. This case is remanded with directions to modify the mittimus to reflect a $25 credit toward the $500 fine.

10

CONCLUSION

For the foregoing reasons, defendant's conviction and sentence are affirmed. The cause is remanded with directions to modify the mittimus to reflect a $25 credit toward the $500 fine imposed by the trial court.


Affirmed in part; cause remanded with directions.


DONOVAN and WEXSTTEN, JJ., concur.

NO. 5-06-0514

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
                                       ) Circuit Court of
       Plaintiff-Appellee, ) Fayette County.
                                         )
v. ) No. 06-CF-20
                                         )
ROBERT C. TAYLOR, ) Honorable
                                         ) S. Gene Schwarm,
       Defendant-Appellant. ) Judge, presiding.

_____

**Opinion Filed**:         April 7, 2008

_____

**Justices**:        Honorable Richard P. Goldenhersh, J.

                  Honorable James K. Donovan, J.,
                  Honorable James M. Wexstten, J.,
                  Concur

_____

**Attorneys**     Daniel M. Kirwan, Deputy Defender, Paige Clark Strawn, Assistant Defender,
**for**            Office of the State Appellate Defender, Fifth Judicial District, 117 North Tenth
**Appellant**   Street, Suite 300, Mt. Vernon, IL 62864

_____

**Attorneys**     Hon. Steve Friedel, State's Attorney, Fayette County Courthouse, Vandalia, IL 62471;
**for**            Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, David Murrell,
**Appellee**    Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois
                  Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____